ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CLIFFORD RIGAUD

**COMPLAINT**

NAME OF PLAINTIFF(S)

v.

CV 12 - 3211

AMON, CH.J.

AZRACK, M.J.

NEW YORK POLICE DEPARTMENT

NAME OF DEFENDANT(S)

This action is brought for discrimination in employment pursuant to (check only those that apply):

X      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

X      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*



RECEIVED
JUN 2 7 2012
PRO SE OFFICE

-1-

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1. Plaintiff resides at:

115-60 222 STREET CAMBRIA HEIGHT

| | Street Address | | |
|---|---|---|---|
| QUEENS | NEW YORK | 11411 | 718-276-5303 |
| County | State | Zip Code | Telephone Number |

2. Defendant(s) resides at, or its business is located at:

168-02 PO Edward Byrne Ave (91 Ave)

| | Street Address | | |
|---|---|---|---|
| QUEENS | NEW YORK | NEW YORK | 11432 |
| County | City | State | Zip Code |

3. The address at which I sought employment or was employed by the defendant(s) is:

ONE POLICE PLAZA

| | Street Address | | |
|---|---|---|---|
| MANHATTAN | NEW YORK | NEW YORK | 10038 |
| County | City | State | Zip Code |

4.   The discriminatory conduct of which I complain in this action includes
     *(check only those that apply).*

             \_\_\_\_\_      Failure to hire.

             \_\_\_\_\_      Termination of my employment.

             __X__      Failure to promote.

             __X__      Failure to accommodate my disability.

             __X__      Unequal terms and conditions of my employment.

             __X__      Retaliation

             __X__      Other acts *(specify)*:  HOSTILE WORK ENVIROMENT

**NOTE:**    *Only those grounds raised in the charge filed with the Equal Employment*
               *Opportunity Commission can be considered by the federal district court.*

5.   It is my best recollection that the alleged discriminatory acts occurred on:
     SEPTEMBER 2009
     Date(s)

6.   I believe that the defendant(s) *(check one)*

        __X__  is still committing these acts against me.

        \_\_\_\_\_  is <u>not</u> still committing these acts against me.

7.   Defendant(s) discriminated against me based on my:
     *(check only those that apply and state the basis for discrimination, for example,*
     *what is your religion, if religious discrimination is alleged)*

    [X]    race MULATTO        [ ]    color _____

    [X]    gender/sex MALE     [X]    religion   MUSLIM

    [X]    national origin   HAITIAN

    [ ]    disability _____

    [ ]    age. If age is checked, answer the following:

        I was born in <u>1966</u> . At the time(s) defendant(s) discriminated against me,
                Year
        I was [X] <u>more</u>  [ ] <u>less</u> than 40 years old. *(check one).*

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8.    The facts of my case are as follows:

This is an action against Defendant to redress a pattern and practice of wrongful and unlawful conduct including, but not limited to: request termination of Plaintiff employment,, unlawful hostile work environment: unlawful retaliation: discrimination against Plaintiff upon his religion faith, violation discrimination against Plaintiff base upon retaliation 1hostile work environment in violation of Title VII of The Civil Right Act of 1964 as amended by the Civil Act Right 1991, 42 U.S.C. Section 19103,19103(a),2000,2000(e), 2000(e)(3)2000(e) -2(a)(I), New York Executive Law Act 15 (NY Human Right Law) and New York State Human Right Law Section 296-297. *(Attach additional sheets as necessary)* See attachment.

**NOTE:** *As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.*

9.    It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: _____.
                                    Date

10.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: _____.
                                                            Date

**Only litigants alleging age discrimination must answer Question #11.**

11.   Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct *(check one)*:

     X      60 days or more have elapsed.

         less than 60 days have elapsed.

12.   The Equal Employment Opportunity Commission *(check one)*:

         has not issued a Right to Sue letter.

     X      has issued a Right to Sue letter, which I
         **received on** _____MARCH 30, 2012_____ .
                        Date

**NOTE:**   Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

       WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

PLAINTIFF'S SIGNATURE

Dated: _____JUNE 27, 2012_____

_____115-60 222 STREET_____
Address
_____CAMBRIA HEIGHT NY 11411_____

_____718-276-5303_____
Phone Number

rev. 5/1/12



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2012 3496

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

March 30, 2012

Mr. Clifford M. Rigaud
115-60 222nd Street
Apt#2
Cambria Heights, NY  11411

Re:  EEOC Charge Against New York City Police Department
     No. 520201200260

Dear Mr. Rigaud:

    Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it will not
be able to investigate and conciliate that charge within 180 days of the
date the Commission assumed jurisdiction over the charge and the
Department has determined that it will not file any lawsuit(s) based
thereon within that time, and because you have specifically requested this
Notice, you are hereby notified that you have the right to institute a
civil action against the above-named respondent under:
     Title I of the Americans with Disabilities Act of 1990,
     42 U.S.C. 12111, et seq., and,
     Title V, Section 503 of the Act, 42 U.S.C. 12203.

    If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.  If
you cannot afford or are unable to retain an attorney to represent you,
the Court may, at its discretion, assist you in obtaining an attorney.  If
you plan to ask the Court to help you find an attorney, you must make this
request of the Court in the form and manner it requires.  Your request to
the Court should be made well before the end of the time period mentioned
above.  A request for representation does not relieve you of the
obligation to file suit within this 90-day period.

    The investigative file pertaining to your case is located in the EEOC
New York District Office, New York, NY.

    This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,


                              Thomas E. Perez
                         Assistant Attorney General
                            Civil Rights Division

                    by   Karen J. Ferguson

                         Karen L. Ferguson
                    Supervisory Civil Rights Analyst
                    Employment Litigation Section

cc: New York District Office, EEOC
    New York City Police Department

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------------X

CLIFFORD M RIGAUD,

Plaintiff,

-against-

THE CITY OF NEW YORK, DEPUTY INSPECTOR CHARLES
MCEVOY, Tax Id. 895710, Individually and in his Official Capacity,
CAPTIAN TIMOTHY DHEEDENE Tax Id. 899139 LIEUTENANT
JASON MARGOLIS, Tax Id. 918540, Individually and in his Official
Capacity, LIEUTENTANT CHRISTOPHER GARCIA, Tax Id.
903994, Individually and in his Official Capacity, LIEUTENANT
CONRAD SEEGERS, Tax Id. 897840, Individually and in his Official
Capacity, LIEUTENANT KEITH KING, Tax Id. 897840 SERGENANT
LAMADOLA  SERGENAT THOMAS RYAN, Tax Id. 899799,
Individually and in his Official Capacity, SGT. MICHAEL ZANELONE,
Tax Id 921875, Individually and in his Official Capacity, SERGEANT
DONALD KIPP, TAX ID 904278 , Individually and in his Official Capacity,
SERGEANT PETER MILIKULUS, Tax Id 933034. Individually and in
his Official Capacity,   SERGEANT DOROTHY AIELLO, Tax Id.
915835 DETECTIVE GRIES Tax Id, 915835 from NYPD OEEO OFFICE,
POLICE OFFICER THERESA CALLAHAN, Tax ID 939453, POLICE
OFFICER RACHEAL SCHNEIDER. and  DEPUTY INSPECTOR,
CAPTAIN, LIEUTENANT SEGREANT, DETECTIVE, P.O.'s "JOHN DOE"
#1-150, Individually and in their Official Capacity (the name John Doe being
fictitious, as the true names are presently unknown) (collectively referred to
as "NYPD defendants"),

Defendants.

---------------------------------------------------------------------------------------X

Plaintiff is his own attorney Clifford M Rigaud complaining of the defendant, respectfully

allege as follows:

1.      This is an action against Defendants to redress a pattern and practice of wrongful and

unlawful conduct including, but not limited to: request termination of Plaintiff s employment;

unlawful hostile work environment; unlawful retaliation; discrimination against Plaintiff based

upon his religion belief, violation discrimination against Plaintiff based upon discrimination 1
retaliation 1 hostile work environment in violation of Title VII of the Civil Rights Act of1964, as
amended by the Civil Rights Act of1991, 42 U.S.C. Sections 19103, 19103(a), 2000, 2000(e),
2000(e)(3), 2000(e)-2(a)(I), New York Executive Law Art. 15 (NY Human Rights Law) and
New York State Human Rights Law Sections 290-297.

2.      This action seeks redress for a coordinated and concentrated effort by high ranking
officials within the New York City Police Department (hereinafter "NYPD") to silence,
intimidate, threaten and retaliate against plaintiff CLIFFORD M RIGAUD, for his
documentation and disclosure of corruption with the NYPD. Specifically, that the NYPD had
established an illegal quota policy for the issuance of summonses and arrests and that defendants
were falsifying and instructing police officers to suborn perjury.
During the course of his employment with Defendants, Plaintiff was subjected to an
unlawful hostile work environment about which Plaintiff repeatedly complained to his
Supervisor, Although Sergeant Stephen McClinton-Young Plaintiff supervisor at the time tried
to help the Plaintiff but was over ride several times By Lieutenant Jason Margolis.

## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the
Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is
founded upon New York State law 215-a, 28, U.S.C. §§ 1331 and 1343 also title 7 act of 1964.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(c), in

that the defendant City of New York is a municipal corporation that resides in the Eastern

District of New York. Further, this matter is inextricably interwoven to a related proceeding

currently pending in the Eastern District of New York, Stinson et. al v. City of New York et. al,

(RWS) 10 CV 4228.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed.

R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff CLIFFORD M RIGAUD is a mulatto male, a citizen of the United States, and at

all relevant times a resident of the City and State of New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized

and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police Department, a

duly authorized public authority and/or police department, authorized to perform all functions of

a police department as per the applicable sections of the New York State Criminal Procedure

Law, acting under the direction and supervision of the aforementioned municipal corporation,

City of New York. founded upon 28 U.S.C. §§ 1331 and 1343.

9.      That at all times hereinafter mentioned, the individually named defendants DEPUTY

THE CITY OF NEW YORK, DEPUTY INSPECTOR CHARLES MCEVOY, Tax Id. 895710,

Individually and in his Official Capacity, CAPTIAN TIMOTHY DHEEDENE Tax Id. 899139

LIEUTENANT JASON ,MARGOLIS Tax Id. 918540, Individually and in his Official Capacity,

LIEUTENTANT CHRISTOPHER GARCIA, Tax Id. 903994, Individually and in his Official

Capacity, LIEUTENANT CONRAD SEEGERS, Tax Id. 897840, Individually and in his Official

Capacity, LIEUTENANT KEITH KING, Tax Id. 897840 SERGENANT LAMADOLA

SERGENAT THOMAS RYAN, Tax Id. 899799, Individually and in his Official Capacity, SGT.

MICHAEL ZANELONE, Tax Id, Individually and in his Official Capacity, SERGEANT

DONALD KIPP, TAX ID 904278, Individually and in his Official Capacity, SERGEANT

PETER MILIKULUS, Tax Id 933034. Individually and in his Official Capacity, Individually and

in his Official Capacity, SERGEANT DOROTHY AIELLO, Tax Id. 915835 DETECTIVE

JANICE GRIES Tax Id, 915835 from NYPD EEO OFFICE Tax Id, POLICE OFFICER

THERESA CALLAHAN, Tax ID 939453, POLICE RACHEAL SCHNEIDER and DEPUTY

INSPECTORs, CAPTAINS, LIEUTENANTS SEGREANTS, DETECTIVES, P.O.'s "JOHN

DOE" #1-150, Individually and in their Official Capacity (the name John Doe being fictitious, as

the true names are presently unknown) (collectively referred to as "NYPD defendants"),  were

duly sworn police officers of said department and were acting under the supervision of said

department and according to their official duties.

10.      That at all times hereinafter mentioned the NYPD defendants, either personally or

through their employees, were acting under color of state law and/or in compliance with the

official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of

New York.

11.     Each and all of the acts of the NYPD defendants alleged herein were done by said

defendants while acting within the scope of their employment by defendant THE CITY OF NEW

YORK.

### FACTUAL BACKGROUND

### Plaintiff's Exemplary Career In the U.S. Army and NYPD

12.     Plaintiff CLIFFORD M RIGAUD is a New York City Police Officer and has been

employed by the New York City Police Department ("NYPD") since July, 2002.

Prior to the events set forth below, plaintiff CLIFFORD M RIGAUD was a decorated New York

City Police Officer and United States Army Veteran.

13.     From 1986 to 1995, plaintiff CLIFFORD M RIGAUD served honorably in the United

States Army and Army Reserve.

14.     During this time, plaintiff CLIFFORD M RIGAUD received several commendations,

including the "National Defense Service Medal" Army Service Medal, National Defense Service

Medal, Overseas Service Ribbon, "South East Asia Service Medal, "Bronze Service star-2,"

"Army Commendation Medal, " "Expert Marksmanship Badge rifle m-16," "Marksmanship

Badge Grenade," and the "First Good Conduct Medal."

15.     Plaintiff CLIFFORD M RIGAUD received an honorable discharge from the United

States Army on July 24, 1991 and Army Reserve until May 30 1995.

16.     Thereafter, Plaintiff CLIFFORD M RIGAUD, whose Grandfather  Captain Myles

Standish Protect of the Pilgrim in Plymouth Rock first established colony in the New World that

was stable and help the New World become the United States of America. General Andrea

Rigaud 1783 fought in America on side of colonists and 1801 was part of the revolution that gave the Haiti it Independence and Plaintiff serve his country in Desert Shield and Storm. Plaintiff decided to join the New York City Police Department in July 2002 after the aftermath of 911.

17.    Three years after joining the NYPD, plaintiff began working at the 103rd Precinct, where he remained until January 29, 2011.

18.    In total, plaintiff CLIFFORD M RIGAUD worked for five years at the 103rd Precinct.

19.    During this time, plaintiff CLIFFORD M RIGAUD became the senior patrol officer while working in the 103rd Precinct.

20.    In this capacity, plaintiff CLIFFORD M RIGAUD was often sought out by other police officers for his knowledge, experience, and sound judgment in handling difficult work situations. In his ten year career with the NYPD, plaintiff CLIFFORD M RIGAUD had an exemplary record and in fact received multiple commendations for his work as a police officer.

21.    For example, On 2007, plaintiff received a "Excellent Police Duty Medal" for his "outstanding performance" as a Police Officer.

**Plaintiff Refuses to Comply with the NYPD's Unlawful Quota Policy, Leading to Increased Pressure and Scrutiny from His Supervisors**

22.    Unlike many of his colleagues, plaintiff CLIFFORD M RIGAUD refused to issue or to be coerced to issue unwarranted and illegal summonses and arrest innocent people in the absence of probable cause simply to meet a quota.

23.     As a direct result of this "non-compliance," in March 2010, plaintiff CLIFFORD M

RIGAUD began to be scrutinized and increasingly pressured by his supervisors and commanding

officer's to increase his "ACTIVITY" (i.e. not writing enough summons and making arrests), or

face possible low performance evaluations and tour/command reassignment.

24.     Specifically, on March 22 2010, plaintiff was summoned to a meeting with DEPUTY

INSPECTOR CHARLES MCEVOY AND LIEUTENANT JASON MARGOLIS, who instruct

Plaintiff to increase his " OVERALL ACTIVITY" to meet certain quota.

Plaintiff indirectly told by Deputy Inspector Charles McEvoy the number he required 25 summons,

three collars a month, and 15 250s Stop Question and Frisk a month that could be very good. Then

started to criticize Plaintiff activity when Deputy Inspector Charles McEvoy was not even 103

Commander until late September 2009.

### Plaintiff Receives a Poor Evaluation Based On His Low Summons "Activity"

25.     On January 2009 Evaluation , plaintiff did, in fact, receive a two Evaluation One from

Plaintiff Supervisor Sergeant Stephanie McClinton- Young which was overall 4.0, and one from

Plaintiff Platoon Commander Lieutenant Jason Margolis 3.0 poor performance evaluation as a result

of his failure to issue the mandated number of summons and arrests required by his Deputy Inspector

Charles McEvoy and Lieutenant Jason Margolis. Deputy Inspector Charles McEvoy was in charge

of 103rd Command for three months.  On January 2010 Evaluation Plaintiff in fact receive an

Evaluation from the  103rd Commander   Deputy Inspector Charles McEvoy which overall 2.5

poor. On January 2011 Evaluation Plaintiff in fact receive an Evaluation from the Psa6 Viper 1

Sergeant  Hector Rodriguez which overall 3.5.

26.     In addition, the balance of the four evaluation contained the following positives  and

negatives praise for plaintiff:

**27.      From Sergeant Stephanie McClinton-Young.**

**Positive:  Sgt McClinton-Young has been Plaintiff supervisor for two years 4.0 2009**

"PO Rigaud performs his duties in a efficient manner. PO Rigaud is conscientious worker who

assumes personal responsibility for his work. PO Rigaud follows directions and instructions and can

be counted on to complete assignment."

**28.      From Lieutenant Jason Margolis.**

**Negative: Lieutenant Jason Margolis has been Platoon Commander for three months 3.0 2009**

"PO Rigaud has potential to be very good officer and very prominent contributor to the success of the

103 Precinct. However , to do this PO Rigaud must become more of a self starter and show better

drive and initiative. PO Rigaud also must improve his skill in terms of working with others in the

platoon and in term or his interaction with those he work with. In addition, PO Rigaud must be more

attentive to instructions he is given by his supervisors."

**29.      From Sergeant Michael Zanleone.**

**Negative: Deputy Inspector Charles McEvoy has been  103 Commander for A year 2.5 2010**

"Police officer Rigaud possesses the ability to become a contributing member of the precinct, however

his overall performance for the evaluation period is extremely low in comparison to his peers assigned

to the same patrol squad. Police Officer Rigaud needs significant improvement in addressing quality of

life matters and precinct crime conditions such as robberies, burglaries and shootings. It should be

noted that on November 11, 2010 Officer Rigaud was informed by the Precinct Commanding Officer

that he was being placed on Level I performance monitoring. It should also be noted that during the

course of the evaluation period, officer Rigaud received a total of 4 separate command disciplines from

different supervisors. Officer Rigaud is aware of department policy regarding EEO.

P.O. Rigaud has instructed been by the undersigned on multiple occasions on his overall performance.

During the rating period P.O. Rigaud has been disciplined multiple times (documented with command

disciplines) for serious offenses. P.O. Rigaud has failed to address the crime conditions and quality life

conditions on his platoon."

**30.      From Sergeant Hector Rodriguez.**

**Positive: Sergeant Hector Rodriguez has been Plaintiff supervisor for one year 3.5 2011**

"PO Rigaud display an integrity that well founded and one that can be used as a model for any Police Officer. PO Rigaud has the drive and initiative of someone that always looks to do better job. He attempt to help anyone that needs it and will at times help before the request is even made. PO Rigaud is an exceptional Police Officer. He exemplifies and display a respect  for both his supervisor and peers that other should attempt."

31.      Thus, it is clear from Deputy Inspector Charles McEvoy 2010 and Lieutenant Jason Margolis 2009 statements that plaintiff's failure to meet the NYPD summons/arrests quota -- which plaintiff's supervisors termed "poor activity" and attributed to plaintiff's "unwilling[ness] to change his approach to meeting performance standards" – was the *real* reason why plaintiff received such a poor performance evaluation.

**Example of The 215-a  Laws of New York being violated**

32.      Plaintiff evaluation at this 103 Pct in four years are 2006 3.0,(Sgt Gorney told Plaintiff He would of gave me a 3.5 but Lieutenant Jason Margolis told him no) 2007 after Lieutenant Jason Margolis left platoon commander of day tour, and Plaintiff went up to evaluation 3.5, in 2008 4.0 and 2009 4.0 (Plaintiff  Sergeant Stephanie McClinton-Young told Plaintiff she gave me 4.0 but Lieutenant Jason Margolis disagree and change Sergeant  evaluation to a 3.0 for just Plaintiff and his partner.)

33.    Plaintiff evaluation for 2010 approve by Deputy Inspector Charles McEvoy to 2.5 for not meeting the new quoting system set by Deputy Inspector Charles McEvoy.

34.    Plaintiff was being retaliate thru January 2011 when Plaintiff was modified ( guns taking away and place  modified assignment ). Which Plaintiff is continue to be retaliate in present time. Sergeant Michael Zanleone gave Plaintiff a very poor evaluations, Lieutenant Jason Margolis, Sergeant Michael Zanleone with the approval of Deputy Charles McEvoy  gave Plaintiff the worst evaluations and occurs when Lieutenant Jason Margolis became his Platoon Commander. When Plaintiff had a meeting for his evaluation grade for 2009 with Lieutenant Deputy Inspector Charles McEvoy and Jason Margolis on March 22, 2010 Deputy Inspector Charles McEvoy stated, "**a lot of what you're evaluated on is by an activity by numbers.**" **Later he said, What I do with my Lieutenant and Sergeants, I always tell them personally everything's all about numbers, numbers, numbers. " McEvoy later goes on saying that he does not want c summonses, but want certain summons and said, " You wrote quality C summons. Which we all know we do not write any more in this place." Deputy Inspector Charles McEvoy also hinted that Plaintiff should do 25 summons and 15 250's a month,"** In 215-a Law part 1 it states that, "no employer duly authorized  agent shall transfer or in any other manner penalize or threaten, expressly or impliedly, an employee as to his or her employment  in a manner, including , but not limited to, a reassignment, a scheduling  change, **an adverse evaluations.**" Based on Plaintiff number Deputy Inspector Charles McEvoy dropped him down to a 3.0 on Plaintiff evaluation  which breaks the 215-a law. **Deputy Inspector Charles McEvoy goes on Record saying  "I would look for little more activity in other areas especially in 250s.  So that's where I stand."**

35.     Thus is clearly an evaluation and overall activity is system wide within the New York Police Department which will Strong-Arm Police Officers enforce Intense Scrutiny by their Supervisors in during the required numbers, as an example Adrian Schoolcraft Case# 10 CV 06005.

### The NYPD's Quota Policy: Struck Down As Illegal in January 2006

36.     In fact, the NYPD had previously been found to be in violation of New York State Labor Law Section 215-a, which makes it illegal to issue poor evaluations for an officer's failure to meet the requirement of for an established summons quota. See In the Matter of P.B.A. and City of New York Case # A-10699-04.

### Plaintiff's in Increased Harassment and Intimidation by His Superior Officers

37.     As a result of plaintiff's intention to pursue his appeal, plaintiff's supervisors at the 103rd Precinct began to create an increasingly hostile work environment for him. Specifically, on March 2010, defendant Sergeant Pena issued plaintiff a command discipline for (Sergeant Pena admitted he was forced to writing a command discipline to Plaintiff by Lieutenant Jason Margolis ) for failure to notify Supervisor of an car accident Member of service involved in which is a must report from radio dispatch to the Patrol Supervisor of the day. Police Officer had central notify Patrol Supervisor again. Sergeant Pena had came to the scene.

**Plaintiff Civil rights Being violated and Examples of title 7 act of 1964 being violated**

38.     Plaintiff had tried to deal with a situation between Plaintiff and Lieutenant Margolis, in 103 Pct in a responsible fashion seen in 2007. Plaintiff tried to deal with this in his own way, accepting his assignments even if they were puzzling to Plaintiff. For example, Lieutenant Margolis placed Plaintiff on foot post in an area which required a two Police Officer presented and the neighborhood people who saw Plaintiff there questioned why was Plaintiff there by himself.

39.     Plaintiff brought his concerns to Pba Delegate PO Pat Henry who met with Lieutenant Jason Margolis to discuss Plaintiff worries. Plaintiff believed at that point, that the meeting with Pba Delegate Pat Henry would had resolved the matter. Unfortunately it did not resolved the problem Lieutenant Jason Margolis continued to give Plaintiff these kinds of assignments which gave Plaintiff no choice, but to escalate this to 103 Commander at the time Inspector Michael Blake.

40.     Plaintiff asked Inspector Michael Blake did Lieutenant Jason Margolis was carrying some personal grudge against Plaintiff based on Plaintiff Muslim faith and due to the fact that Lieutenant Margolis is of Jewish faith. Inspector Michael Blake told Plaintiff he would handle this. Inspector Blake did addressed Plaintiff issues, Lieutenant Margolis had accepted another position as Special Operation Lieutenant and was no longer Plaintiff platoon commander of the day tour.

41.     Once Plaintiff was under a new platoon commander everything was going well. Plaintiff joined the Muslim Officer Society in November of 2008. Plaintiff noticed fellow Muslim

Officers wearing beard and they explained that Muslim Officers were able to wear their beard for religious reasons.  Plaintiff thought about wearing his bread and in February 2009 Plaintiff decided to wear bread for his faith and in hope of getting closer with the Muslim Community Plaintiff work in.

42.     At first, the Police Officers in 103 Pct gave Plaintiff some interesting looks. Plaintiff tried to explain to his follow Police Officers the reason behind Plaintiff decision. But the comment came back stating Plaintiff was doing this to get back at the Supervisors when reality it was not true.

43.     Plaintiff in April 2009 had vacation and  Plaintiff placed a 28 in to secure an extra two extra days. Plaintiff 28 requested was not denied before leaving for vacation.. While Plaintiff was on vacation Sergeant Stephanie Clinton-Young called Plaintiff.  Plaintiff answered thinking something may had happened to his partner. Sergeant Stephanie Clinton-Young explain to Plaintiff  had to return back to work immediately because days requested had been denied and Plaintiff had One Police Plaza detail on Sunday April 12 2009, since there were not enough Police Officers for coverage for that day.

44.     Plaintiff explained to Sergeant Stephanie Clinton-Young that this was new to Plaintiff. Plaintiff been denied, Plaintiff would had been notified prior to his vacation. Additionally, Plaintiff was traveling by car with his children and it was impossible for Plaintiff to return. Plaintiff contacted roll call, asked them if Plaintiff  were in the Red Book. Officer personnel stated yes but indicated that Plaintiff could change at any time. Plaintiff informed Roll call also they should call Plaintiff on house phone and not Plaintiff cell as Patrol Guide Procedure states. Sgt Stephanie McClinton-Young told  Plaintiff Police Officer Theresa Callahan stated it came

from Lieutenant Conrad Seeger. Plaintiff explain to Sergeant Stephanie McClinton-Young would not be able to show up until Monday.

45.     Subsequently upon arrival from his vacation, plaintiff find out from Police Officer Michele Alexander when Officer Alexander went to roll call to talk to Police Officer Theresa Callahan to find out why Plaintiff was called to come back from Plaintiff vacation. Since Sunday April 12 2009 was Easter Holiday Plaintiff did not celebrate this holiday because plaintiff is a Muslim. What Police Officer Theresa Callahan did not realize Plaintiff's children are Catholic.

Plaintiff had a meeting in April 2009 with the ICO Lieutenant Keith King in regard about this situation.

46.     On April 27, Plaintiff noticed Plaintiff had One Police Plaza detail for the 28, 29 this month. Plaintiff asked Officer Theresa Callahan what was the reason behind me getting this One Police Plaza again. Officer Callahan just answered with a nasty tone "oh well you got it." Plaintiff went looking for Lieutenant King, but he was not in his office. Plaintiff asked Lieutenant Christopher Garcia for an explanation but he was too busy. Plaintiff called Lieutenant Seeger, but he was with an EDP. Normally Plaintiff partner Michele Alexander was the one that would deal with roll call, more than on one occasion when situation seem unfair to them as partner.

47.     Plaintiff became frustrated as the Plaintiff seeking help with the Supervisors were all too busy. Plaintiff went back to roll call, and Plaintiff asked Police Officer Theresa Callahan why Plaintiff and his partner continue to be separated many times. This is not right because other Police Partners do not get separated as much as Plaintiff and his partner do. Is it because our

partnership was the only minority that why? Officer Theresa Callahan walk out the room and went to get help from Lieutenant Christopher Garcia.

48. Then Lieutenant Christopher Garcia now decide to stop what he was doing and come in the room and asks Plaintiff what was going on. Plaintiff had finally explained to Lieutenant Christopher Garcia what was going on for years with Plaintiff and his partner. Lieutenant Christopher Garcia stated Plaintiff is to loud and Plaintiff would be suspended. As They were walking down the hall going to I.C.O. Office ( Note: several officers had been loud and out of control in roll call before, Police Officer Costa, Langman, and Krausa and more, nothing happen to them.) Plaintiff had to radio in dispatch that Plaintiff would be in Administration at 103 Pct and jobs reassign; Plaintiff radio run until Plaintiff become available. Also at no time during the procedure was Plaintiff told to give up guns. Plaintiff after the meeting would go back to patrol.

49. Lieutenant Christopher Garcia told Lieutenant King Plaintiff was loud and he never seen something like this before. Plaintiff ask Lieutenant Christopher Garcia did he remember Sgt Gilbert was yelling loud Scream at Plaintiff in the morning around 6am and Lieutenant Christopher Garcia stated that has nothing to do for what happen today. Lieutenant Christopher Garcia wanted me to get a command discipline. Note: (Lieutenant Christopher Garcia and Sgt Demma had a blowout a year or two ago no one suspended or given command discipline) Lieutenant Keith King did explain to Lieutenant Christopher Garcia had talk to Plaintiff about the issue regarding roll call. Lieutenant Keith King stated he had not had time to address roll call about these issues yet.

50. Plaintiff did explain to Lieutenant Keith king that Lieutenant Conrad Seeger stated he had an agreement with the Police Officers, that we would do at least two One Police Plaza Detail a

month. As for Plaintiff and partner, Lieutenant Conrad Seeger stated he heard we do not pick up

our jobs from other Police Officers but he does not see that.

51.     Lieutenant Keith King and Lieutenant Conrad Seeger told Plaintiff that he would not get

a command discipline and  Plaintiff would have to do the One Police Plaza Detail. Lieutenant

Christopher Garcia tried to tell the other two Lieutenant that Plaintiff should receive a command

discipline but Lieutenant Keith King refused and Lieutenant Conrad Seeger agree with him.

52.     Then both Lieutenant Christopher Garcia and Lieutenant Keith King went to speak

Captain Deleon to discuss about this issue.  Captain Deleon told Lieutenant Christopher Garcia

to leave this officer (Plaintiff) alone.  Plaintiff did  go do One Police Plaza Detail extra and

C.R.V. detail in May. And  Plaintiff was told by Lieutenants not to go to roll call again or

Plaintiff  will get a get a command discipline. Plaintiff has not went to roll call from April

27,2009 until Plaintiff was place on modified duty and reassign to Viper One on January 28.2011

in 103 Precinct.

53.     Lieutenant Christopher Garcia stated Plaintiff was not professional and he wanted

Plaintiff to get a command discipline. This was not the first time an Police Officer was loud in

roll call. This was the first time a minority Police Officer was loud in roll call though. Lieutenant

Keith King and Lieutenant Conrad Seeger stated said no to the command discipline but Plaintiff

had to apologize to roll call for being loud now. Plaintiff ask Lieutenant Keith King if it o.k. to

wait until another day. Lieutenant King stated Plaintiff  had to do it today apologize or else. (No

other Police Officers had to apologize before to roll call).

54.     Plaintiff went down to roll call with Lieutenant Keith King enter the office first and told

plaintiff to wait outside, then came back out and brought in Plaintiff  in the office. Plaintiff did

apologize to roll call, personnel seem to accept Plaintiff apologize. P.O. Theresa Callahan start to vent in loud tone of voice and stated " **I feel you do not deserve to wear the uniform. The entire Supervisors here thinks you are an E.D.P ( Emotional Disturbed Person) and the Police Officers do not like you.**" Plaintiff understand in letting someone vent but for P.O. Theresa Callahan to say Plaintiff should not wear the uniform which Plaintiff have 7 years being an Honorable Police Officer compared to her 3 years was totally out of place and the supervisors said Plaintiff was E.D.P. Police Officer. Theresa Callahan has be known to date some of the supervisors at 103 Precinct P.O. Theresa Callahan would not come say this in front of the I.C.O. Lieutenant Keith King, if Nypd policy was followed by the supervisors. (Plaintiff had tried to explain to Lieutenant Keith King P.O. Theresa Callahan has an issue with Plaintiff due to part of Plaintiff religion faith and her involvement with supervisors which had a negative impact on the plaintiff). Whoever heard calling someone on vacations to come back and do a detail with no emergency occurring in the city?

55.     Plaintiff's partner PO Michele Alexander over heard while waiting outside Captain Deleon office to speak to him. Alexander over heard Lieutenant Christopher Garcia and Lieutenant King talking about this issue. Captain Deleon stated to leave Plaintiff alone.

56.     In June 2009 Plaintiff was notified by Lieutenant Christopher Garcia that Plaintiff was being assigned Liberty pool detail.   Lieutenant Mitch was present. Plaintiff asked Lieutenant Christopher Garcia why Plaintiff was getting this assignment.   Lieutenant Christopher Garcia indicated that Plaintiff knew why, and referenced to the incident on April 27, 2009 with Officer Callahan. Plaintiff went and spoke with Inspector Blake. Plaintiff explained to Inspector Blake about this situation about Plaintiff's very good work record and Plaintiff thought situation was over. Inspector Blake explained that this will part of Plaintiff punishment too, Plaintiff given an

order he did do the Liberty Pool Detail. Although the Pool Detail at the 103 Precinct was a volunteer which Plaintiff did not volunteer for. This detail normally go to Police Officers who has no partner or a rookie Police Officer.

57.     One day In July 2009 on Plaintiff rotation day off (rdo) from the pool detail Officer Lopez covered the pool. Supervisor at the pool Elliot Jones heard Officer Lopez state that, "because of that fucking Muslim (in reference to Plaintiff) I have the Liberty pool detail today."

58.     Then on July 18 2009 coming from Liberty pool detail Plaintiff was approached by Pba Delegate PO Joe Rao. Pba Delegate PO Joe Rao explained to Plaintiff two command disciplines waiting for the Plaintiff and they wanted four vacation days. Plaintiff explained to Pba Delegate Joe Rao In the meeting with Lieutenant King, Lieutenant Seeger and Lieutenant Christopher Garcia Plaintiff would not get any command discipline. The following punishment was handed down One Police Plaza Detail, CRV Detail, Pool Detail which separated Plaintiff from his partner and no overtime all summer long. Lieutenant Christopher Garcia had gone over guide line set for in Patrol Guide 206-04 Authorized Penalties Under Command Discipline. Pba Delegate Joe Rao stated seen Pba Delegate was not in the office and it was Plaintiff word against three Nypd Lieutenants.

59.     Plaintiff was continues being discipline in the matter which occurred in Roll Call in April 27 2009. Plaintiff heard about these command discipline again in September 2009 By Lieutenant Keith King and in November 2009 Pba Delegate Dumont stated that Lieutenant Conrad Seeger the new ICO, told him if Plaintiff do not sign the command discipline Plaintiff would get another one for refusing to sign.

60.    In section 703 of the title 7 act under part C2 it states "It shall be unlawful for employment practice and for a labor organization to **limit, segregate**, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin." The evaluation was breaking the title seven law by limiting Plaintiff to just to SP 10 and details. This was Discrimination base on religion and segregation based on Plaintiff and his partner were the only two Police Officers being treated like this. This was retaliation against Plaintiff for his religion faith and the issues Plaintiff brought up to previous 103 Commander Inspector Michael Blake in 2007.

61.    Plaintiff partner Police Officer Michele Alexander was told by Lieutenant Jason Margolis and Sergeant Michael Zanleone not to be Plaintiff partner or PO Michele Alexander would suffer the same fate as Plaintiff. Subsequently Plaintiff later found out that Police Officer Michele Alexander his partner was being sexually harassed by Lieutenant Jason Margolis

62.    Plaintiff and his Partner had enough. Police Officer Michele Alexander In January 2010 went to Pba Delegate PO Dumont to find out why we were doing SP 10 and what was going on with our evaluation? Our evaluation which was done by Sergeant Stephanie McClinton-Young was rejected by Lieutenant Jason Margolis. Pba Delegate PO Dumont came back and told Plaintiff and his partner that Lieutenant Jason Margolis stated that Deputy Inspector Charles McEvoy had told him to have senior police officer do SP10 and because Plaintiff and his partner only had one cell in the Summon Auto and they do not back police officers up in 10-85 (Officer requesting help). Since the arrival of Lieutenant Jason Margolis to the platoon, Plaintiff and his

partner been assigned a lot more details and SP10 than the other Police Officers Plaintiff partner

Officer Michele Alexander was suffering due to the fact she is Plaintiff partner.

63.    Plaintiff and his partner was working in hostile work environment, No Police Officers

wants to be in the Police vehicle with Plaintiff or his partner when they had another assignment

to do. Police Officer Michele Alexander asked Officers why they did not like the Plaintiff?

Police Officers did not have an answer. The Police Officers did stated that Plaintiff was wrong

in fighting with the Supervisors. In that type of environment, it appears that employees are being

negatively impacted by their Supervisors' relationship. If the Supervisors is not getting along

with an Police Officers, then all the other Police Officers will not cause of fear of being retaliated

against by the supervisors.

64.    For example Sergeant Stephen McClinton-Young was not relieve from meal while doing

Desk Duty at 103 Precinct for not falling in line with rest of the peers against Plaintiff. Other

Police Officers in the 103 Precinct would do anything not to work with Plaintiff, talk to the

supervisor, other Police Officers to take their place, or reassign plaintiff assignment to

accommodate the Police Officer.

65.    Plaintiff February 2, 2010 did ask Lieutenant Jason Margolis can he speak to him

privately? Lieutenant Jason Margolis Plaintiff asked him the question at the desk. When did

Deputy Inspector Charles McEvoy stated that he wanted senior police officer to do SP10 and

could not give Plaintiff an answer. Lieutenant Margolis stated he's the platoon command can

change the roll call. Plaintiff told him he did not appreciate the comment he made about the

Haitians on Jan 17, 2010: because Plaintiff was of Haitian origin and that comment indicates one

of the reason why Lieutenant Margolis was treating Plaintiff unjustly.  Lieutenant Margolis

stated if Plaintiff had a problem with his comment, Plaintiff needed to go to Nypd OEEO Department.

66.    On return from Plaintiff day off Feb 5, 2010 when and after finishing roll call, The new Lieutenant told Plaintiff he needed to speak to him. Lieutenant told Plaintiff that Captain Timothy Dheedene had asked him to tell Plaintiff to hand over guns to him. Plaintiff asked him why and he told Plaintiff would need to speak to the Captain Timothy Dheedene. Plaintiff remembered that Lieutenant Jason Margolis had stated in roll call on January 17 2010 that **"Haitians are carry guns, going around and shooting each other."** Since, Plaintiff of Haitian origin descent and felt being targeted unfairly. By taking Plaintiffs guns based on Lieutenant Jason Margolis comment, they were classifying him as a Haitian who was going to shoot other Haitian which is discrimination, deprive employee status, and breaks the title seven law. In part a2 under section 703 of title 7 it states, "to limit, segregate, or **classify** his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." The Captain Timothy Dheedene informed Captain Timothy Dheedene that he had to go to early intervention because of behavior back April 27, 2009 and on February 2, 2010 which had been brought to his attention.

67.    Plaintiff was not allow to explain his side of the story or had any Pba Delegate be present. Plaintiff was hoping that the Captain Timothy Dheedene would have provided Plaintiff with an opportunity to hear his side of the story before taking such action.

68.    Plaintiff was driven to One Police Plaza to the ten floor to see Early Intervention Unity Detective Rodriguez. Upon arrival at the meeting Plaintiff was now to be interview by a

Sergeant. After Plaintiff explain the situation Sergeant that, Sergeant had to send Plaintiff to Nypd OEEO Department. Plaintiff stated he had been there already. Sergeant he had no choice but to send to them because of Protocol. Sergeant told the Lieutenant who accompany Plaintiff upon arrive back to the command immediately return his guns.

69.     Plaintiff went thru chain of command in the 103 Pct and met with a negative result. Plaintiff went to the Nypd OEEO with a negative result. Plaintiff to resolve the issue did try and requested a Mutual transfer with another Officer which Plaintiff was immediately retaliated By Deputy Inspector Charles McEvoy and Place in Level One Monitoring. although Deputy Inspector Charles McEvoy told Plaintiff was doing well with his work but due to many Command Disciplines Plaintiff was being on Level 1.

70.     Plaintiff had tried every mean within the Police Department for help for years to resolve this issue with no negative result thru the process.

Plaintiff while having the meeting with Deputy Inspector Charles McEvoy and Lieutenant Jason Margolis

explain to Deputy Inspector Charles McEvoy his claim was base on retaliation by Lieutenant Jason Margolis.

71.     PO Clifford Rigaud:   Also, I want to say one more thing. Officer Alexander went to roll call to find out what was going on with us  with SP 10. Personnel up there  told her that Lieutenant Margolis came upstairs and told them from now on, we're going to have SP10 and that any detail  that comes down will be based…we will not have it, not based on seniority.

 DI Charles McEvoy:  You've already…I've already explained to you how my feeling about
                seniority.

PO Clifford Rigaud:  Yeah, I understand that. I'm just letting you know what he said. This is pure retaliation from his point of view. It's not that it has to do with me doing my job and stuff, it's a, this is a fix.

DI Charles McEvoy:  The retaliation is from what?

PO Clifford Rigaud:  You ask him.

DI Charles McEvoy:  No, you were telling me to tell him. You got to tell me. I'm not going to ask Lieutenant Jason Margolis.

PO Clifford Rigaud:  You know, the first thing I say said I'm a Muslim and he a Jew, I'm a Muslim and he's Jewish. I brought to the attention of Blake he took care of it. The second thing was he became a platoon commander. Suddenly I'm not performing my duties, I'm not doing this. I'm not doing that. How did that suddenly occur? Sergeant Pena, Sergeant Hagan, they good Sergeant, but they been here three, four months from last year. They weren't even around. They can't base somebody performance on that three months or four months like that.

Note: Sergeant Pena Hagan was not Plaintiff immediate Supervisors but B2 and B3 Square.

DI Charles McEvoy:  All right. All right .Do you have anything else to say?

PO Clifford Rigaud:  That be all.

DI Charles McEvoy:  All right. If you want to go farther with your evaluation, you know the process you have to do through.. Borough personnel..

72.    By the end of March 2010 until early September 2010 Lieutenant Jason Margolis was not

Plaintiff Platoon Commander and was performance Plaintiff Police duty, Lieutenant Martin

Zuniga was the Platoon Commander. In late September 2010 Deputy Inspector Charles McEvoy

removed Lieutenant Martin Zuniga from the day tour and replace him with Lieutenant Jason

Margolis once again. Plaintiff was worried though that Lieutenant Jason Margolis would

continue harassing, retaliation and attack. Lieutenant Jason Margolis would continue were he

left, doing roll call, Plaintiff and his partner would get SP10 again considered the rookie car.

Lieutenant Jason Margolis even knowing that Officer Martin and Galiauto had requested assignment SP 10 when they are doing their tour Lieutenant Jason Margolis would change roll call assignment of Plaintiff and his partner when he would come in and or call in to set Plaintiff and his partner in SP10, even when two Police Officers had requested the assignment

73.     Deputy Inspector Charles McEvoy did not question Lieutenant Jason Margolis while still in the meeting regarding the Plaintiff issues of retaliation.

74.     As a result of the foregoing negligent acts and omissions by defendant CITY OF NEW YORK, plaintiff CLIFFORD M RIGAUD has suffered physical and mental injury, pain and trauma, together with embarrassment, humiliation shock, fright, and loss of freedom.

75.     Defendant CITY OF NEW YORK selected, hired, trained, retained, assigned and supervised all members of said its Police Department, including the defendants individually named above.

76.     Defendant CITY OF NEW YORK was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of its Police Department including the defendants individually named above.

77.     Defendant CITY OF NEW YORK was negligent and careless when it repeatedly failed to act and/or discipline supervisory personnel in the face of obvious evidence of corruption and misconduct.

## Negligence in Failing to Keep IAB Complaints Confidential

78.     Defendant CITY OF NEW YORK was further negligent and careless when it repeatedly

allowed allegedly confidential IAB complaints regarding supervisory personnel to be "leaked" to

the very same officials of who were the subjects of the complaints.

79.     Additionally defendant CITY OF NEW YORK was on notice that IAB was failing to

keep complaints of corruption and illegality confidential due to a similar "leak" in the 42nd

Precinct regarding allegations of illegality which occurred in September, 2009 involving P.O.

Frank Pallestro.

80.     Further defendant CITY OF NEW YORK was on notice that IAB was failing to keep

complaints of corruption and illegality confidential due to a similar "leak" in the 42nd Precinct

regarding allegations of illegality involving P.O. Adhyl Polanco.

## DAMAGES

81.     As a direct and proximate result of the foregoing acts of the Defendants' Plaintiff

sustained and suffered the following:

(A) Violation of Plaintiffs rights as secured by the Americans with Disabilities Act;

(B) Violation of Plaintiffs rights as secured by Title VII of the Civil Rights Acts

of 1964,. as amended by the Civil Rights Act of 1991;

(C) Violation of Plaintiffs Rights as secured by 42 U.S.C. Section 19103, 19103(a),

2000, 2000(e), 2000(e)(3), and 2000(e)-2(a)(I), *et. seq.;*

(D) Violation of Plaintiffs Rights as secured by the New York State Human

Rights Law, N.Y. Executive Law, Article 15 and Sections 290-297;28

(E) Humiliation, mental pain, anguish, pain and suffering, and emotional distress, (both intentional and negligent);

(F) Economic damages, including loss of income;

(G) Psychological, emotional and economic damages which are direct and/or proximate consequences of the Defendants' actions, that are continuing to date, and, upon information and belief, will continue into the future.

82.     I am an record for Plaintiff Clifford M Rigaud. I have read the annexed **SUMMONS WITH NOTICE, COMPLAINT** and **JURY DEMAND** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files and discussions with Plaintiff.

83.     By reason of the aforesaid conduct by defendants, plaintiff CLIFFORD M RIGAUD requests the following relief:

> A. Compensatory damages in the amount of Fifty million dollars ($50,000,000);
>
> B. Punitive damages in the amount of Fifty  million dollars ($50,000,000.00);
>
> C. An award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements; and
>
> D. Any further relief as the Court may find just and proper.

WHEREFORE, plaintiff CLIFFORD M RIGAUD demands judgment in the sum of Fifty million dollars ($50,000,000.00) in compensatory damages, Fifty million ($50,000,000.00) in punitive damages, plus any attorney's fees, costs, and disbursements of this action.

Dated: Queens, New York

June 27, 2012

By

Clifford M Rigaud

11S-60 222 Street

Cambria Height Ny 11411

718-276-5303