Docket No.: 12cv03211(CBA)(VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------------X
CLIFFORD M RIGAUD,

      Plaintiff,

              -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT,

LIEUTENANT JASON MARGOLIS, Tax ID. 918540, individually and in his

official capacity, DEPUTY INSPECTOR CHARLES MCEVOY, Tax ID 895710,

individually and in his official capacity, SERGEANT DONALD KIPP, Tax ID 904278,

individually and in his official capacity, CAPTAIN TIMOTHY DHEEDENE, Tax

ID 899139, individually and in his official capacity, LIEUTENANT CHRISTOPHER

GARCIA, Tax ID 903994, individually and in his official capacity, SERGEANT MICHAEL

ZANELONE, Tax ID 921875, individually and in his official capacity, THERESA

CALLAHAN, Tax ID 939453, individually and in her official capacity and "JOHN DOES"

and "JANE DOES", names being fictitious intended to be fficers/representatives/agents/

servants of the New York City Police Department, individually and in their official capacity

      Defendants.

------------------------------------------------------------------------------------------X

AMENDED
VERIFIED
COMPLAINT

      Plaintiff, Police Officer Clifford Regard, (hereinafter "Plaintiff"), by and through his

attorneys, DRUMMOND & SQUILLACE, PLLC, states as follows:

## INTRODUCTION

1. This is an action against Defendants to redress a pattern and practice of wrongful and

unlawful conduct including, but not limited to: coordinated effort to secure the termination of Plaintiff s employment; coordinated efforts to penalize/punish the Plaintiff through the administrative channels/proceedings of the New York City Police Department, unlawful hostile work environment; unlawful retaliation; discrimination against Plaintiff based upon his religious belief, violation against Plaintiff based upon Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 19103, 19103(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(I), New York Executive Law Art. 15 (NY Human Rights Law) and New York State Human Rights Law Sections 290-297; discrimination against the Plaintiff based upon his disability in violation of the American with disabilities Act, 42, USC. Sections 1202, 12111(8), 12112(a) Title 1 of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq, discrimination against the Plaintiff based upon his religion in violation of the Constitution of the State of New York and the Constitution of the United States of America, discrimination against the Plaintiff based upon his national origin and hostile work environment in violation of the laws and the Constitution of the State of New York and the laws and the Constitution of the United States of America.

2.      Plaintiff is medically diagnosed as disabled in that Plaintiff suffers from Attention Deficit Disorder of which the Defendants herein named are aware of.   In addition, Plaintiff is of the Muslim Religious faith of which the Defendants herein named are aware of.  During the course of his employment and continuing, Plaintiff was subjected to discrimination based upon his disability, religion his race, national origin to which Plaintiff complaint to the New York City, and New York City Police Department and to his Chain of Command in the New York City Police Department, but to no avail.   After Plaintiff complained of the foregoing, in response, Plaintiff was subjected to retaliation in that the Defendants acting in concert each with the other

and within the scope of employment embarked upon a systematic and coordinated effort to frustrate, harass, intimidate and punish the Plaintiff.

3.      In response to his complaint of hostile work environment and intimidation, Plaintiff was told by one of the Defendants that the Plaintiff was EDP—emotionally disturbed person--that he is not fit to wear the uniform and that none of the officers, including the Plaintiff's supervisors liked him or wanted him in the command or on the force.

4.      As a direct and proximate result of the Defendants' wrongful and unlawful conduct Plaintiff had to seek medical treatment.

5.      As a direct and proximate result of Defendants' wrongful and unlawful conduct, Plaintiff has suffered and continues to suffer mental anguish, loss of the enjoyment of life, emotional distress, (both intentional and negligent), deprivation of his civil rights and loss of income and retirement benefits, rights and privileges.

## JURISDICTION

6.      This action is brought pursuant; the Americans with Disabilities Act, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title 1 of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq., Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(1), 42 U.S.C. § 1983 and 42 U.S.C. § 1988, Fourteenth Amendments to the United States Constitution, 28, U.S.C. §§ 1331 and 1343 also title 7 act of 1964,New York Executive Law Art. 15 (NY Human Rights Law), New York State Human Rights Law Sections 290-297, New York State law 215-a.

## VENUE

7.      Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(c), in that the defendant City of New York is a municipal corporation that resides in the Eastern District of New York and under 28 U.S.C. Section 1391(b) .

## PARTIES

8.      Plaintiff    CLIFFORD    M.    RIGAUD,    (hereinafter    "Plaintiff")    is    a mulatto/AfroAmerican male, a citizen of the United States, who originated from the Caribbean Island of Haiti and at all relevant times a resident of the City and State of New York and is of Muslim Faith.  At all times hereinmentioned the Defendants knew and/or had reasons to know that Plaintiff is Haitian, is a Mulatto/AfroAmerican male and is of the Muslim Faith.

9.      That Plaintiff is a member of a Protected Class under the laws and Constitution of the United States of America and the laws and Constitution of the State of New York.

10.     Plaintiff is a New York City Police Officer and has been employed by the New York City Police Department ("NYPD") since July, 2002.

11.     Prior to the events set forth below, Plaintiff was a decorated New York City Police Officer and United States Army Veteran.

12.     From 1986 to 1995, Plaintiff served honorably in the United States Army and Army Reserve.

13.     During this time, Plaintiff received several commendations, including the "National Defense Service Medal" Army Service Medal, National Defense Service Medal, Overseas Service Ribbon, "South East Asia Service Medal, "Bronze Service star-2," "Army Commendation Medal, " "Expert Marksmanship Badge rifle m-16," "Marksmanship Badge Grenade," and the "First Good Conduct Medal."

14.     Plaintiff CLIFFORD M RIGAUD received an honorable discharge from the United States Army on July 24, 1991 and Army Reserve until May 30 1995.

15.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

16.     Defendant CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

17.     THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, LIEUTENANT JASON    MARGOLIS, Tax ID 918540, individually and in  his official capacity, DEPUTY  INSPECTOR  CHARLES MCEVOY, Tax ID 895710, individually and in his official  capacity, SERGEANT DONALD KIPP, TAX ID 904278 , individually and in his official capacity, CAPTIAN TIMOTHY DHEEDENE Tax ID 899139, individually and in his official capacity, LIEUTENTANT CHRISTOPHER GARCIA, Tax ID 903994, individually and in his official capacity, SERGEANT MICHAEL  ZANELONE, Tax ID 921875, individually and in his official capacity, THERESA CALLAHAN, Tax ID 939453, individually and in her official

capacity, and "JOHN DOES" and "JANE DOES", names being fictitious intended to Officers/representatives/agents/servants of    the    New    York City    Police Department, (hereinafter collectively referred to as "Defendants"), individually and in their official capacity, were duly sworn police officers, agents, servants, employees of the City of New York and/or New York City Police Department and at all times herein were acting in their individual capacity and/or as agents, servants, employees in their respective official capacity with all the actual and/or perceived/apparent authority granted, allotted, entrusted to them by the City of New York and/or New York City Police Department in according with their official duties and titles.

18.    Separate and apart from the entitlement and authority entrusted to him based upon his rank as a Lieutenant in arguably the most powerful Police Department in the world, Defendant, Lieutenant Jason Margolis is a highly influential member of the New York City Police Department as same Defendant has held many powerful command positions and same Defendant served and/or is serving as President and/or has held and/or his holding high status titles/position and/or is a member of many New York City Police Department organization and other civic organizations.

19.    That at all times herein mentioned the Defendants either individually/personally or through their employees, were acting under color of state law, acting in concert each with the other and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York when they engaged in the herein mention unlawful and discriminatory acts and practice against the Plaintiff.

20.    In addition to the facts alleged in the foregoing and following subparagraphs, the Defendants, are sued in their individual capacities and in their respective official capacities as agents, servants, licensees and/or employees of Defendants, The City of New York and New

York City Police Department and for the purpose of the within action and at all times herein alleged, acted within the scope of their employment as agents, servants, licensees and/or employees of Defendants the City of New York and New York City Police Department.

21.    Defendants employ more than fifteen (15) employees and is an "employer" as defined by the Age Discrimination in Employment Act, ("ADEA"), 29 USCS §§621, 623(a)(1), et.seq.; the Americans with Disabilities Act, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title 1 of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq., Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(1), New York Executive Law Art. 15 (NY Human Rights Law), New York State Human Rights Law Sections 290-297and the Laws of the State of New York and United States of America.

## EXHAUSTION OF CIVIL ADMINISTRATIVE PROCEDURES

22.    Plaintiff timely filed his complaint with the City of New York and the New York City Police Department internal the Equal Employment Opportunity Commission (EEOC) and subsequently timely filed his complaint with Equal Employment Opportunity Commission (EEOC) the a charge of discrimination based upon his race, national origin, disability, retaliation and hostile work environment against Defendants.  Plaintiff received a Notice of the Right to Sue from the EEOC and commenced the within action within 90 days of the receipt of his right to sue letter from the EEOC.

## JURY DEMAND

23.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## FACTUAL AND GENERAL ALLEGATIONS

24.     Moved by the horrible terrorist events of September 2011, in July 2002, Plaintiff joined the New York City Police Department.

25.     Three years after joining the NYPD, Plaintiff began working at the 103rd Precinct, where he remained until January 29, 2011.

26.     While at the 103rd. Precinct through his hard work and dedication to the Police Department, Plaintiff, became the senior patrol officer while working in the 103rd Precinct and in that capacity, Plaintiff was often sought out by other police officers for his knowledge, experience, and sound judgment in handling difficult work situations.

27.     From on or about July 2002 to on or about January 2009, Plaintiff had an exemplary record and received a number of commendations for his work as a police officer.

28.     In 2007, Plaintiff was awarded an "Excellent Police Duty Medal" for his outstanding performance as a Police Officer.

29.     Plaintiff first started experiencing Discrimination in the year 2006 through 2007 when Defendant, Lieutenant Jason Margolis became the Platoon Commander at the 103 Precinct.

30.     During that time, Defendant Lieutenant Jason Margolis knew that the Plaintiff was of the Muslim Religious faith and in the presence of Defendant, Lieutenant Jason Margolis stated that in sum and substance that Palestinians do not belong in the Middle East and that Muslims are to be blamed for a vast majority of the troubles of the world.

31.     Plaintiff believed that Defendant Lieutenant Jason Margolis made the foregoing statement in the presence of the Plaintiff in an effort to harass, annoy, frustrate and alarm the Plaintiff based upon the Plaintiff's Muslim Religious faith.

32.    In response to Defendant Lieutenant Jason Margolis foregoing statement Plaintiff informed same Defendant that Plaintiff would appreciate it if same Defendant refrained from anti Muslims/religious remark in the workplace.    In addition, in 2007, Defendant Lieutenant Margolis repeated placed Plaintiff alone on foot patrol in an area which the Defendant New York City and New York City Police Department designated as a mandatory two police minimum patrol area due to the high level and serious nature the criminal activity in the area.  On or about 2006-2007, Plaintiff brought these concerns to PBA Delegate PO Pat Henry who met with Lieutenant Jason Margolis to discuss Plaintiff concerns.  Plaintiff believed at that point, that the meeting with PBA Delegate Pat Henry would resolve the matter.    Unfortunately it did not resolved the problem and Defendant Lieutenant Jason Margolis continued to give Plaintiff these kinds of assignments which gave Plaintiff no choice, but to escalate this to 103 Commander at the time Inspector Michael Blake.  Plaintiff specifically informed Inspector Michael Blake that Plaintiff believes that Defendant Lieutenant Jason Margolis was carrying some personal grudge against Plaintiff based on Plaintiff Muslim faith, the Plaintiff's National Origin, the Plaintiff's race and the Plaintiffs disability.   Inspector Blake informed the Plaintiff that he would address the Plaintiff's concern with Defendant Lieutenant Jason Margolis but as demonstrated herein, the matter was never address.

33.    In addition, Plaintiff requested of his PBA delegate to address the issue with Defendant Lieutenant Margolis and subsequently Plaintiff came to learn that the PBA delegate did in fact address the issue with Defendant Lieutenant Jason Margolis and that as a result, same Defendant was highly agitated that Plaintiff had complained to the PBA Delegate about the foregoing.

34.    Thereafter, for reasons unknown to the Plaintiff, Defendant Lieutenant Jason Margolis was no longer the Plaintiff's Platoon Commander and Plaintiff no longer reported to him.

35.    From January 2009 to December 2009 Sergeant MaClinton-Young was Plaintiff's immediate supervisor to whom Plaintiff reported directly and who was charged with the responsibility of writing Plaintiff's annual performance evaluation.

36.    In September of 2009, Defendant Lieutenant Jason Margolis became the day tour Platoon Commander of the 103rd. Precinct and as such, while Plaintiff did not directly report to Defendant Lieutenant Jason Margolis, same Defendant once again was within the Plaintiff's chain of command. On or about the same time, Defendant Deputy Inspector Charles McEvoy also became the Command of the 103rd. Precinct.

37.    In December 2009, Plaintiff received a positive annual evaluation report from his direct supervisor, Sergeant MaClinton-Young based upon Plaintiff's performance from January 1, 2009 to December 31, 2009. In the overall rater's comments of the annual evaluation report, Sergeant MaClinton-Young notes that "**P.O. Riguard performs his duties in a efficient manner. P.O. Riguad is a conscientious worker who assumes personal responsibility for his work. P.O. Riguard follows directions and instructions and can be counted on to complete his assignments.**"

38.    Even though Defendant Jason Margolis was not within the Plaintiff's chain of command for nine months of the evaluation period and was not in a capacity to observe the Plaintiff's duty performance even after same Defendant the period of time that same Defendant became the day tour Platoon Commander, same Defendant sought to have Sergeant MaClinton-Young change her positive annual performance evaluation of the Plaintiff to a negative one.

39.    Since Sergeant MaClinton-Young would not change her positive annual evaluation report of the Plaintiff, Defendant Jason Margolis, on his own initiative, with Defendant Deputy Inspector Charles McEvoy being the approving officer, even though they bother were not in a position to observe the Plaintiff's duty performance and even though for two thirds of the evaluated period—some nine months--, same Defendants were not even in Plaintiff's change of command, same Defendants gave the Plaintiff a separate negative annual evaluation report.  In the overall rater's comments of the annual evaluation report, Defendant Jason Margolis notes, with Defendant Deputy Inspector Charles McEvoy approving, that **"...P.O. Riguad must become more of a self starter and show better drive and initiative. PO Riguard also must improve his skills in terms of working with others in the platoon and in terms of his interactions with those he works with.  In addition, PO Riguad must be more attentive to the instructions he is given by his supervisors."**

40.    The Plaintiff refused to sign Defendant Lieutenant Jason Margolis' annual evaluation report and reported/complained to his chain of command, to the Defendant the City of New York, and the New York City Police Department that Defendant Jason Margolis changed Plaintiff's evaluation report in retaliation for Plaintiff complaining to the PBA Delegate in 2006-2007 about same Defendant's harassing and anti-Muslim comments in 2006—2007.

41.    The chain of command same, the Defendant, New York City and the Defendant New York City Police Department took no action based upon Plaintiff's complaint.

42.    On January 12, 2012, the Island of Haiti suffered what many reports dubbed one of the deadliest earthquakes of all times.  An estimated three million Haitian were affected by the quake, an estimated Three Hundred and Sixteen Thousand Haitians died, Three Hundred Thousand had been injured and One Million Haitians made homeless.

43.     For Several days leading into weeks after the earthquake many Haitians were unaccounted for and many were trapped under the rubbles of collapsed homes and buildings. A massive rescue effort was undertaken with international daily media reports of survivors being pulled from under the rubbles and unfortunately reports of individuals who simply did not make it.

44.     As a result of the earthquake, Defendant the City of New York and Defendant New York City Police Department was seeking Police Officers who would volunteer to travel to Haiti to assist in security and recovery efforts.

45.     Following the aftermath of the earthquake, as many Haitians, Plaintiff had family members that were missing and/or unaccounted for.

46.     On January 17, 2010, Plaintiff reported to duty at the 103rd. Precinct Roll Call Room where Defendant, Lieutenant Margolis was conducting the Roll Call.

47.     During same Roll Call Defendant Lieutenant Jason Margolis knew and had reasons to know that the Plaintiff was Haitian that Plaintiff was in fact present for the Roll Call and that Plaintiff had family and relatives living in Haiti who may have perished as a result of the earthquake.

48.     During same Roll Call, Defendant Lieutenant Jason Margolis inquired in sum and substance if any officers were going to volunteer to travel to Haiti to assist with security and recover efforts as part of the Defendant New York City and the Defendant New York City Police Department's effort to assist with security and recovery efforts in Haiti.

49.     In response to Defendant Lieutenant Jason Margolis' inquiry, a number of Police Officers in the Roll Call Room raised their hands indicating that they were volunteering to travel to Haiti to assist with the security and recovery efforts.

50.    Seeing the raised hands of the Police Officers in the Roll Call Room, Defendant Lieutenant Jason Margolis remarked in sum and substance—that same officers are assuming the risk because you all know how those Haitians are—they all have guns and they all like to shoot each other.

51.    Plaintiff believes that Defendant Lieutenant Jason Margolis made the foregoing remarks to harass, annoy, alarm, frustrate and create a hostile work environment for the Plaintiff based upon the Plaintiff's race, national origin, religion, disability and in retaliation against the Plaintiff for complaining to the chain of command about the hostile work environment created by same Defendant.

52.    On or about February 2, 2010, Plaintiff came to learned that Defendant Lieutenant Jason Margolis had reassigned him to SP-10 detail.  SP-10 assignments are view by as undesirable duty assignment and are referred to as "Rookie Detail"—given to officers who are new to the force or junior to other officers at the command.

53.    At the time Defendant Lieutenant Jason Margolis reassigned the Plaintiff to this SP-10 "Rookie Detail" the Plaintiff approximately eight years of employment with the New York City Police Department and there were many junior officers at the command at the time, including Defendant, Theresa Callahan, who were junior in rank to the Plaintiff.

54.    After Roll Call on February 2, 2010, the Plaintiff approached Defendant Lieutenant Jason Margolis and asked to speak to same Defendant privately relative to the SP-10 assignment and relative to the remarks that same Defendant stated about Haitians during January 17, 2010 Roll Call.  In response, Defendant Lieutenant Jason Margolis, turned his back to the Plaintiff and then in a condescending fashion stated to the Plaintiff in sum and substance that if

this was about his assignment to SP-10 that same Defendant is the Platoon Commander and can do whatever he wants with the duty assignment.

55.    In response Plaintiff informed Defendant Lieutenant Jason Margolis that same Defendant knew that Plaintiff is Haitian and that Plaintiff did not appreciate same Defendant's remarks regarding Haitians during the roll call of January 17, 2010.

55.    In response, Defendant Lieutenant Jason Margolis, did not deny making the comments regarding the Haitians and did not apologize for making same comments, but instead, again in a condescending tone, told Plaintiff that if Plaintiff had a problem with same Defendant's his comments, Plaintiff needed to go to NYPD OEEO Department.

56.    Plaintiff complained to the chain of command, to New York City and New York City Police Department of Defendant Lieutenant Jason Margolis' remarks regarding Haitians and same Defendant's conduct in assigning the Plaintiff to "Rookie Details" as a means of punishing, harassing, alarming, frustrating the Plaintiff, based upon Plaintiffs, race, disability, national origin and in retaliation and in creating a hostile work environment.

57.    It is common knowledge within the New York City Police Department that the most humiliating thing that the command can do to a Police Officer is to demand that the Officer surrender his/her shield and gun.

58.    On February 5, 2010, upon return from Plaintiff's regular day off, immediately after Roll Call, Plaintiff was approached by a Lieutenant who informed the Plaintiff that Defendant, Captain Timothy Dheedene had directed same lieutenant to order the Plaintiff to surrender his gun.

59.    Subsequently, Plaintiff was directed by Defendant Captain Timothy Dheedene that Plaintiff is being ordered to attend to early intervention based upon what Defendant

Timothy Dheedene attributed as "inappropriate behavior" by Plaintiff on April 27, 2009 and on February 2, 2010 which had been brought to his attention by Defendant Lieutenant Jason Margolis.

60.    Defendant Captain Timothy Dheedene refused to listen to anything Plaintiff had to say relative to the continued course of unlawful and harassing, intimidating, alarming and hostile work environment was being visited upon the Plaintiff at the hands of Defendant Lieutenant Jason Margolis.

61.    Plaintiff was not allow to explain his side of the story or had a PBA Delegate be present.  Instead, Defendant Captain Timothy Dheedene directed that Plaintiff be escorted immediately to One Police Plaza to the ten floor to seek Early Intervention Unity Detective Rodriguez.

62.    Upon arrival at One Police Plaza, Plaintiff was interviewed by a Sergeant and after Plaintiff explained the events that have led to Plaintiff being directed to early intervention, that Sergeant directed the Plaintiff to report the matter to the New York City Police Department internal OEEO Department.    In response, Plaintiff stated he had already reported the matter to the Defendant, New York City Police Department OEEO Department to no avail.

63.    The Sergeant then informed the Plaintiff that while he thought that the Plaintiff was the victim of discrimination, he had no choice directed the Plaintiff to surrender his gun.

64.    On February 5, 2010, Plaintiff surrendered his gun to the Defendant New York City, New York City Police Department and to date, same has not been returned.

65.    For each and every act/wrongdoing herein complained of, Plaintiff reported same to his Chain of Command, to the 103rd. Precinct, to the Defendant New York City, New York

City Police Department, to the New York City Police Department OEEO with negative results, to no avail and with the discriminatory practice continuing and/or escalating.

66.     Realizing the foregoing and that the discriminatory practice would continue, Plaintiff requested of Defendant Deputy Inspector Charles McEvoy a mutual transfer with another officer and same was denied by Defendant Deputy Inspector Charles McEvoy and/or by the Defendants and the New York City Police Department in the scope of their respective employment and in concert one with the other to further their desired goal of unlawful and discriminatory conduct against the Plaintiff.

67.     In retaliation for Plaintiff complaining to the Chain of Command, to Defendant New York City, to the New York City Police Department and to the New York City Police Department internal EEOC/OEEO office, Plaintiff was immediately retaliated against By Deputy Inspector Charles McEvoy and  Placed in Level One Monitoring.

68.     Deputy Inspector Charles McEvoy told Plaintiff was doing well with his work but due to many Command Disciplines Plaintiff was being on Level 1.

69.     Plaintiff herein is a diligent officer who is prepared to address any violations of the Laws of the State of New York.

70.     In March 2010, Plaintiff began to be scrutinized and increasingly pressured by the Defendants; specifically by Defendants Lieutenant Jason Margolis and Deputy Inspector Charles McEvoy to increase his "ACTIVITY"—to write more  summons and to effectuate more arrest.

71.     Plaintiff was informed by the Defendants that if Plaintiff fails to write more summons and/or make more arrest that Plaintiff would again receive another low performance evaluations and tour/command reassignment.

72.     That Plaintiff took an oath to uphold the laws of the State of New York and the Constitution of the State of New York and as such, cannot, did not and would not write a summons and/or effectuate an arrest with just, legal and/or probable cause.

73.     Specifically, on March 22 2010, plaintiff was summoned to a meeting with Defendant Deputy Inspector Charles McEvoy and Defendant Lieutenant Jason Margolis, who both, instructed and directed the Plaintiff to increase his "OVERALL ACTIVITY" to meet certain quota. Specifically, Defendant Deputy Inspector directed the Plaintiff to secure 25 summons, three arrest per month and to conduct Fifteen 250s Stop Question and Frisk a month.

74.     During the foregoing meeting Defendants Deputy Inspector Charles McEvoy and Lieutenant Jason Margolis stated in sum and substance that "**a lot of what you're evaluated on is by an activity by numbers."**

75.     In the foregoing meeting Defendant Deputy Inspector Charles McEvoy stated in sum and substance that he always conveys to his  Lieutenant and Sergeants is that every is all about the about numbers, numbers, numbers—number of arrests and number of summonses written.  That that he does not want c summonses, but want certain summons and said, " You wrote quality C summons. Which we all know we do not write any more in this place." Deputy Inspector Charles McEvoy also hinted that Plaintiff should do 25 summons and 15 250's a month."

76.     Deputy Inspector Charles McEvoy went on to tell the Plaintiff in same meeting that he expected a given number and specific kind of summons from the Plaintiff each and every month otherwise the Plaintiff would receive a negative evaluation.

77.    Plaintiff explained to the Defendants that without my firearm and given the punitive assignments, such as SP-10 that was below the Plaintiff's rank in light of the number of subordinate officers within the command, that to have such a quota system is unlawful and beyond the practical.

78.    Subsequent to the foregoing meeting, Defendant Sergeant Michael Zanleone gave Plaintiff very poor evaluations.  These evaluation was given by Defendant Sergeant Michael Zanleone while acting in concert with Defendants, Lieutenant Jason Margolis and with the approval of Deputy Inspector Charles McEvoy.

79.    On November 11, 2010 Plaintiff was informed by the Precinct Commanding Officer that Plaintiff was being placed on Level I performance monitoring.

80.    Subsequent to Defendants Lieutenant Jason Margolis and Deputy Inspector Charles McEvoy returning to the 103rd. Precinct, the Plaintiff has received numerous command discipline for conduct that was not improper and for events that is alleged to have occurred before and that during the time period where these Defendants were in command.

81.    Due to Plaintiff's race, religion, national origin and as a result of Plaintiff's effort to pursue an appeal, based upon discrimination, due to hostile work environment and retaliation, The Defendants acting in concert one with each other, created an increasingly discriminatory, retaliatory and hostile work environment.

82.    Specifically, on March 2010, Sergeant Pena wrongfully issued Plaintiff   a command discipline for which he admitted he was forced to issue by Defendant Lieutenant Jason Margolis.

83.    The foregoing Command Discipline was alleged predicated upon was for a failure to notify Supervisor of a car accident Member of service involved in which is a must report from radio dispatch to the Patrol Supervisor of the day.  However, the Patrol supervisor was in fact properly notified and Sergeant Pena himself had responded to the accident scene.

83.    Plaintiff even started receiving Command Discipline for events that transpired several months previous to Defendants Deputy Inspector McEvoy and Lieutenant Margolis assumed positions with the 103rd. Precinct.    For example, in April 2009 had planned vacation with Plaintiff's family and submitted the proper request for same vacation.    Plaintiff was led to believe that the vacation request was granted however, while Plaintiff was on vacation, Plaintiff received a telephone call from Sergeant Stephanie Clinton-Young directing the Plaintiff to return from vacation and report to work immediately because the requested vacation and that Plaintiff must report to One Police Plaza on Easter Sunday, April 12, 2009.

84.    Plaintiff was informed by Sergeant Stephanie Clinton-Young that this directive for the Plaintiff to return from vacation and report to work was convey to her by Defendant Police Officer Theresa Callahan and that Police Officer Theresa Callahan was acting under the direction and authority of Defendant Lieutenant Conrad Seeger.

85.    Plaintiff subsequently learned upon returning from vacation that the reason Plaintiff was called off vacation is because Plaintiff is of the Muslim Religious faith and as such, the Defendants acting in concert and belief one with the other, determined that Plaintiff should not be off for Easter and under color of law and within the scope of their employment decided to direct Plaintiff to return from vacation.

86.    Thereafter, on April 27, 2009, Plaintiff was directed to report to One Police Plaza detail for the on April 28, 29 this month.    Plaintiff asked Defendant Officer Theresa Callahan what was the reason behind Plaintiff receiving such frequent detail to One Police Plaza as such duty was usually reserved for junior officer and not in such frequency.

87.    In response, Defendant Officer Callahan just answered with a nasty tone "oh well you got it." Plaintiff went to speak to the change of command as to this repeated detail and was not able to speak to anyone within the chain of command despite repeated efforts.

88.    Plaintiff subsequently returned to Defendant Police Officer Callahan to inquire as to the assignment and Defendant Police Officer Callahan stated to the Plaintiff that P.O. Theresa Callahan start to vent in loud tone of voice and stated **"I feel you do not deserve to wear the uniform. The entire Supervisors here thinks you are an E.D.P (Emotional Disturbed Person) and the Police Officers do not like you."**

89.    As a result of the foregoing, and the continued harassment, Defendant Police Officer Callahan and the Plaintiff, who are of the same rank, engaged in back and forth banter. Defendant Lieutenant Garcia, without addressing the issue as to why the Plaintiff was repeatedly given this "rookie assignments", stated that Plaintiff will be suspended.

90.    In June 2009 Plaintiff was notified by Lieutenant Christopher Garcia that Plaintiff was being assigned Liberty pool detail.  Plaintiff asked Lieutenant Christopher Garcia why Plaintiff was getting this assignment.  Lieutenant Christopher Garcia indicated that Plaintiff was getting the foregoing assignment because of the exchange that the Plaintiff had with Defendant Theresa Callahan relative to Plaintiff's inquiry of receiving "Rookie Details".

91.    Subsequently, Plaintiff inquired of Inspector Blake as to why Plaintiff was being punished for the foregoing inquiry and Inspector Blake explained that the detail was part of Plaintiff's punishment and Plaintiff given an order he did do the Liberty Pool Detail.

92.    Subsequently, the Plaintiff was brought up on charges/specifications, which are currently pending, by the Defendants the City of New York and New York City Police Department at the direction of the Defendants acting in concert one with the other within the

scope of their employment under color of law, specifically Defendant Lieutenant Jason Margolis and Defendant Deputy Inspector Charles McEvoy.

93.    As a result of the foregoing, from April 27, 2009 until Plaintiff was placed on modified duty and reassign to Viper One on January 28, 2011 in 103 Precinct at the direction of Defendants acting in concert one with the other and specifically, Defendants Lieutenant Margolis and Deputy Inspector MeEvoy.

94.    Other officers of different race, religion, national origin and who are not disabled are not treated in the foregoing manner as the Plaintiff for like conduct and/or similar behavior.

95.    In July of 2009, while Plaintiff was on the foregoing pool detail, Officer Lopez was overheard stating that "because of that fucking Muslim (in reference to Plaintiff) I have the Liberty pool detail today."

96.    As part of their continued effort to discriminate against the Plaintiff due to Plaintiffs, race, religion, national origin, disability and in retaliation and in their determined effort to subject Plaintiff to a hostile work environment, on or about 2010 to 2011, the Defendants, specifically, Defendant Lieutenant Jason Margolis and Defendant Sergeant Michael Zanleone, informed Plaintiff's partner, Police Officer Michelle Alexander, that she will suffer the same fate as the Plaintiff if she did not make efforts to distance herself from the Plaintiff and to no longer serve as Plaintiff's Partner.

97.    Subsequently, Police Officer Michelle Alexander became the target of sexual harassment by Defendant Lieutenant Jason Margolis and has also been the subject of several punitive and disciplinary actions at the hands of the Defendants acting in concert each with the other in their determined effort to discriminate against the Plaintiff based upon the Plaintiff's

race, religion, national origin, disability and in their determine effort to create a hostile work environment for the Plaintiff and to retaliation against the Plaintiff.

98.    On or about April 15, 2010, Plaintiff became the subject of a command discipline based upon allegations that Plaintiff was inattentive while on security post and was observed using an unauthorized personal cellular telephone.    This charge was predicated upon the Defendants acting in concert each with other under color law to discriminate against the Plaintiff based upon based upon the Plaintiff's race, religion, national origin, disability and in their determine effort to create a hostile work environment for the Plaintiff and to retaliation against the Plaintiff.

99.    On or about April 27, 2009, Plaintiff became the subject of a command discipline based upon allegations that engaged in improper conduct within the workplace and that Plaintiff sought medical attention due to his disability.    This charge was predicated upon the Defendants acting in concert each with other under color law to discriminate against the Plaintiff based upon based upon the Plaintiff's race, religion, national origin, disability and in their determine effort to create a hostile work environment for the Plaintiff and to retaliation against the Plaintiff.

100.    On or about February 2, 2010, Plaintiff became the subject of a command discipline based upon allegations that the Plaintiff was discourteous to the Defendant Lieutenant Jason Margolis.    This charge was predicated upon the Defendants acting in concert each with other under color law to discriminate against the Plaintiff based upon based upon the Plaintiff's race, religion, national origin, disability and in their determine effort to create a hostile work environment for the Plaintiff and to retaliation against the Plaintiff.

101.    On or about October 30, 2010, Plaintiff became the subject of a command discipline based upon allegations that the Plaintiff failed to report to his assigned duty station. This charge was predicated upon the Defendants acting in concert each with other under color law to discriminate against the Plaintiff based upon based upon the Plaintiff's race, religion, national origin, disability and in their determine effort to create a hostile work environment for the Plaintiff and to retaliation against the Plaintiff.

102.    On or about January 28, 2011, laintiff became the subject of a command discipline based upon allegations that the Plaintiff was discourteous to Defendant Deputy Inspector Charles McEvoy.  This charge was predicated upon the Defendants acting in concert each with other under color law to discriminate against the Plaintiff based upon based upon the Plaintiff's race, religion, national origin, disability and in their determine effort to create a hostile work environment for the Plaintiff and to retaliation against the Plaintiff.

103.    As a result of the Defendants unlawful and discriminatory conduct, Plaintiff had to see and is currently under the care of medical doctor.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

104..    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint numbered "1-103" with the same force and effect as if set forth at length herein.

105.    Plaintiff is an employee within the meaning of the Americans with Disabilities Act.

106.    Plaintiff has been employed with the Defendants since 2002 and is disabled as defined by the Americans with Disabilities Act.

107.    Plaintiff has been and is able to perform all the duties of a New York City Police Officer without reasonable accommodation.

108.    Plaintiff was and still is otherwise able to perform the essential functions of a housekeeper with reasonable accommodation.

109.    Defendants are an employer as defined by the Americans with Disabilities Act.

110.    Plaintiff was employed by Defendants for all relevant periods herein.

111.    Defendants the City of New York and New York City Police Department are the employers of the other named Defendants.

112.    The other named Defendants and "JANE AND JOHN  DOE" are agents, employees, licensees and/or servants of Defendants the City of New York and New York City Police Department.

113.    Defendants, the City of New York and New York City Police Department are liable for the intentional and unlawful discriminatory acts, conduct, treatment, practices and/or policies that were unlawfully and discriminatorily applied to Plaintiff.

114.    Defendants violated the Americans with Disabilities Act by being aware of Plaintiff's disability and, after being requested to make reasonable accommodation to the Plaintiff, Defendants intentionally and unlawfully refused to provide such reasonable accommodation.

115.    Further, as a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.    Plaintiff suffered damage to her pension and/or retirement benefits.

b.    Plaintiff seeks compensation for all lost wages and benefits, plus prejudgment interest at the prevailing rate.

c.    Plaintiff suffers emotional distress both intentional and negligent.

d.    Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of the ADA.

f.    Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

g.    Defendants' conduct was an intentional and willful violation of the ADA.

h.    Plaintiff is entitled to an award of liquidated damages within the meaning of the ADA.

116.    Plaintiff claims damages herein.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

## FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## 42 U.S.C. SECTIONS 1981, 1981(a), & 2000e. seq.

117.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint number "1" to "116" with the same force and effect as if set forth at length herein.

118.    Defendants the City of New York and New York City Police Department are employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981, 1981(a), 42 U.S.C. Section 2000e, *et. seq.*

119.    Defendants' unlawful, discriminatory, retaliatory, abusive and/or hostile conduct/work environment and treatment against Plaintiff because of his disability, race, national origin and exercise of his right to engage in the protected activity of registering complaints about the workplace, deprived Plaintiff of his right to make and enforce contracts to the full and equal benefit of Defendants' regulations and all laws and proceedings for the security of Plaintiff's employment in violation of Title VII of the Civil rights Act, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3) and 2000(e)-2(a)(1).

120.    Defendants, their officers, agents, servants, and/or employees are responsible for the intentional and unlawful/discriminatory/hostile/retaliatory acts, conduct, treatment, practices and /or policies, and for creating and/or fostering a hostile work environment that caused Plaintiff to suffer and sustain damages.

121.    Defendants, their officers, agents, servants, and/or employees are/were, at all times herein mentioned, acting within the scope of their employment.

122.    Defendants the City of New York and New York City Police Department are liable for said Defendants' intentional, unlawful, discriminatory, hostile and/or retaliatory acts, conduct, treatment, practices and/or policies against Plaintiff.

123.    That during the course of his employment, Plaintiff engaged in the protected activity of registering complaints to Defendants about the hostile and unlawful work environment/conditions with his last complaint being made before and subsequent to each and every unlawful act and of mistreatment by the Defendants towards the Plaintiff.

124.    Defendants, their officers, agents, servants, and/or employees discriminated in the workplace against Plaintiff because of his disability and in unlawful retaliation to Plaintiff's complaints about the hostile work environment/conditions.

125.    Defendants do not treat other non-disabled group(s) similarly situated as Plaintiff, as they treated the Plaintiff.

126.    Defendants do not treat other groups who do not engage in the protected activity of registering complaints about work conditions/environment, similarly situated as Plaintiff, as they treated Plaintiff.

127.    Defendants New York City and New York City Police Department are liable for said Defendants' intentional and unlawful and discriminatory acts, conduct, treatment, practices and/or policies that were intentionally, hostilely, unlawfully and discriminatorily applied to Plaintiff.

128.    Defendants New York City and New York City Police Department knew of said Defendants' unlawful, discriminatory, retaliatory and hostile and/or abusive acts, conduct, treatment, practices, and/or policies against the Plaintiff, and/or, had same Defendants exercised due care they would have discovered same.

129.    Defendants failed to take remedial and/or corrective action to address the unlawful, retaliatory and discriminatory practices the Defendants caused to be visited upon the Plaintiff.

130.    Defendants unlawfully created and/or fostered a discriminatory, retaliatory, hostile and/or abusive work environment against the Plaintiff based upon his age, disability and exercise of a protected activity of complaining about the hostile work environment/conditions.

131.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.      Plaintiff suffered damage to her pension and/or retirement benefits.

b.      Plaintiff suffered and is suffering psychological emotional distress

e.      Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of Title VII of the Civil Rights Act.

f.      Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

g.      Defendants' conduct was an intentional and willful violation of Title VII of the Civil Rights Act.

h.    Plaintiff is entitled to an award of liquidated damages within the meaning of

Ti tle VII of the Civil Rights Act.

132.    Plaintiff claims damages herein.

## PENDENT STATE CLAIMS

133.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1"to "132" with the same force and effect as if set forth at length herein.

134.    Defendants are an employer within the meaning of the New York Human Rights Law, New York Executive Law Article 15, and New York Executive Law Sections 290-297.

135.    Plaintiff is an employee within the meaning of the New York Human Rights Law, New York Executive Law Article 15 and New York Human rights Law Sections 290-297.

136.    In 2008 when Plaintiff was official diagnosed with Attention Deficit Disorder, plaintiff, informed the Defendants of same diagnoses and requested reasonable accommodation.

137.    Based upon the diagnosis, Plaintiff was and is disabled and entitled to his requested reasonable accommodation as defined by the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

138.    Defendants never provided the Plaintiff with reasonable accommodation as requested and as they are obligated to do.

139.    As set forth above, Defendants unlawfully discriminated against Plaintiff, created and/or fostered a hostile work environment based upon his age and disability and further

unlawfully retaliated against him for engaging in protected activity and, as such, are liable for their intentional and willful violations of the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

140.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.    Plaintiff suffered damage to her pension and/or retirement benefits.

b.    Plaintiff suffered and is suffering psychological emotional distress

c.    Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of Title VII of the Civil Rights Act.

d.    Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

e.    Defendants' conduct was an intentional and willful violation of Title VII of the Civil Rights Act.

f.    Defendants' conduct was an intentional and willful violation of New York Human Rights Law, New Executive Law Article 15 and New York Executive Law Sections 290-297.

g.    Plaintiff is entitled to an award of liquidated damages within the meaning of New York Human Rights Law, New Executive Law Article 15 and New York Executive Law Sections 290-297.

141.    Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

142.    Plaintiff claims damages herein.

## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

143.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1"to "142" with the same force and effect as if set forth at length herein.

144.    Defendants, their officers, agents, servants, and/or employees are, at all time herein mentioned, agents, servants and/or employees acting within the scope of their employment.

145.    Defendants engaged in extreme and outrageous conduct, intentionally, recklessly, and/or negligently causing Plaintiff to suffer severe emotional distress.

146.    As a direct result of Defendants' extreme and outrageous conduct, Plaintiff was caused to suffer and sustain psychological injuries including, but not limited to, humiliation, mental pain, anguish, pain and suffering, and emotional distress (both intentional and negligent).

147.    As a direct result of Defendants' extreme and outrageous conduct, Plaintiff claims damages for the injuries set forth above.

148.    Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

149.    Plaintiff claims damages herein.

## DAMAGES

150.    As a direct and proximate result of the foregoing acts of the Defendants' Plaintiff sustained and suffered the following:

(a)    Violation of Plaintiff's rights as secured by the Americans with Disabilities Act;

(b)    Violation of Plaintiff's rights as secured by Title VII of the Civil Rights Acts of 1964, as amended by the Civil Rights Act of 1991;

(c)    Violation of Plaintiff's Rights as secured by 42 U.S.C. Section 1981, 1981(a), 2000, 2000(e), 2000(e)(3), and 2000(e)-2(a)(1), *et. seq.*;

(d)    Violation of Plaintiff's Rights as secured by the New York State Human Rights Law, N.Y. Executive Law, Article 15 and Sections 290-297;

(e)    Humiliation, mental pain, anguish, pain and suffering, and emotional distress, (both intentional and negligent);

(f)    Economic damages, including loss of income;

(g)    Psychological, emotional and economic damages which are direct and/or proximate consequences of the Defendants' actions, that are continuing to date, and, upon information and belief, will continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff POLICE OFFICER CLIFFORD RIGAUD requests the following relief jointly and severally as against all of the Defendants:

1.  Award compensatory damages in an amount to be determined at trial;

2.  Award punitive damages in an amount to be determined at trial;

3.  Disbursements, costs and attorneys' fees; and

4.  For such other further relief to this Court may seem just and proper.

**ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED**

**OR HAVE OCCURRED.**

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated:       Jamaica, New York

November 21, 2012

Yours, etc.,

STEPHEN L. DRUMMOND (SLD 7359)

Drummond & Squillace, PLLC

Attorneys for Plaintiff

CLIFFORD RIGAUD

175-61 Hillside Avenue, Suite 205

Jamaica, New York 11432

(718) 298-5050

## ATTORNEY'S VERIFICATION

STEPHEN L. DRUMMOND, An attorney duly admitted to practice before the Courts of the State of New York and before the Eastern and Southern Districts of New York of the United States District Court, affirms the following to be true under the penalties of perjury:

1.    I am an attorney at DRUMMOND & SQUILLACE, PLLC, attorneys of record for Plaintiff Clifford Rigaud.  I have read the annexed **AMENDED VERIFIED COMPLAINT** and **JURY DEMAND** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files and discussions with Plaintiff.

2.    This verification is made by me because Plaintiff is not presently in the County wherein I maintain my offices.

DATED:    Jamaica, New York
          November 21, 2012

STEPHEN L. DRUMMOND

1

Docket No.: 12cv03211((CBA)(VMS)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------------------------------X

CLIFFORD RIGAUD,

Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, LIEUTENANT JASON MARGOLIS, Tax ID. 918540, individually and in his official capacity, DEPUTY INSPECTOR CHARLES MCEVOY, Tax ID 895710, individually and in his official capacity, SERGEANT DONALD KIPP, Tax ID 904278, individually and in his official capacity, CAPTAIN TIMOTHY DHEEDENE, Tax ID 899139, individually and in his official capacity, LIEUTENANT CHRISTOPHER GARCIA, Tax ID 903994, individually and in his official capacity, SERGEANT MICHAEL ZANELONE, Tax ID 921875, individually and in his official capacity, THERESA CALLAHAN, Tax ID 939453, individually and in her official capacity and "JOHN DOES" and "JANE DOES", names being fictitious intended to be Officers/representatives/agents/servants of the New York City Police Department, individually and in their official capacity,

Defendants.

------------------------------------------------------------------------------------------------------X

## AMENDED VERIFIED COMPLAINT AND JURY DEMAND

**DRUMMOND & SQUILLACE, PLLC**
*Attorneys for Plaintiff*
**175-61 Hillside Avenue, Suite 205**
**Jamaica, New York 11432**
**(718) 298-5050**