133.    That on March 30, 2012, the U.S. Department of Justice, in response to Plaintiff's request for administrative closure of and right to sue letter for his EEOC Charge against the Defendants, EEOC Charge No.: 520-2012-00260, issued a Notice of Right to Sue to Plaintiff for said Charge No.: 520-2012-00260. *Annexed hereto and made a part hereof as Exhibit "J" is a copy of said Right to Sue Notice.*

134.    That on or about April 12, 2012, <u>thirteen (13) days after Plaintiff was issued the March 30, 2012 Notice of Right to Sue the Defendants for Plaintiff's EEOC Charges,</u> in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

135.    That on or about May 4, 2012, <u>one (1) month and four (4) days after Plaintiff was issued the March 30, 2012 Notice of Right to Sue the Defendants for Plaintiff's EEOC Charges,</u> in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

136.    That after being issued the right to sue letter for his EEOC Charge against the Defendants, EEOC Charge No.: 520-2012-00260, Plaintiff, on June 27, 2012, filed suit in the United States District Court for the Eastern District of New York against Defendants NYC and NYPD and against the individual police officers including Margolis, McEvoy and Callahan, Docket No.: 12cv3211, for unlawful hostile work environment, unlawful discrimination, unlawful retaliation based upon Plaintiff's race, color, national origin, religion, disability and for his exercising of his right to register complaints about the conditions of the workplace.

137.    That on or about July 13, 2012, sixteen (16) days after Plaintiff filed suit herein against the Defendants, in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

138.    That on or about August 3, 2012, one (1) month and one (1) week after Plaintiff filed suit herein against the Defendants, in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

37

139.    That on or about September 28, 2012, <u>three (3) months and one (1) day after Plaintiff filed suit herein against the Defendants</u>, in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

140.    That on or about October 5, 2012, <u>three (3) months and eight (8) days after Plaintiff filed suit herein against the Defendants</u> in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

141.    That on or about October 19, 2012, <u>three (3) months and twenty two (22) days after Plaintiff filed suit herein against the Defendants</u> in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful

retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

142.    That on or about November 23, 2012, in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, color, national origin and disability and in unlawful retaliation against Plaintiff for exercising his right to register complaints about the Defendants' unlawful conduct against him.

143.    That on or about November 23, 2012, during the aforementioned hearings/trial, Plaintiff, in exercising his right to testify on his own behalf and in exercising his right to complain about the unlawful discrimination, harassment, hostile work environment and retaliation by the Defendants against him, including Defendants' bringing the charges and specifications for trial against him, testified against the Defendants and on his own behalf.

144.    That on or about November 26, 2012, three (3) days (two (2) business days) after Plaintiff testified at his trial on his own behalf and against the Defendants herein, including testifying specifically against Defendants McEvoy, Margolis and Callahan, the Defendants, in their continued unlawful conduct, notified Plaintiff to report to Internal Affairs Bureau (IAB) as he was now the subject of an investigation for conduct that allegedly occurred back in November 2011—over one year prior -- for an alleged failure to report a generalized remark of alleged corruption by no specific officer made by a local store worker.

145.    That on or about November 29, 2012, <u>six (6) days after Plaintiff testified on his own behalf and against Defendants including Margolis, McEvoy and Callahan,</u> in furtherance of their unlawful conduct, the Defendants forced Plaintiff to appear before IAB as the subject of the aforementioned GO 15 investigation and was questioned by two IAB Detectives of the NYPD. That on or about December 6, 2012, <u>thirteen days after Plaintiff testified on his own behalf against Defendants including Margolis, McEvoy and Callahan,</u> in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, religion, national origin and disability.

146.    That, upon retaining counsel to represent him in the within action against Defendants, Plaintiff filed and served the Defendants with an Amended Complaint dated November 21, 2012 and Second Amended Complaint on or about February 8, 2013 under the aforementioned and within Docket Number.

147.    That <u>less than three (3) weeks after</u> Plaintiff filed and served the Second Amended Complaint against Defendants NYC and NYPD and the individual officers, on or about February 25, 2013, Plaintiff received Defendants City and NYPD's Deputy Commissioner of Trials Martin G. Karopkin's (hereinafter "Karopkin") proposed findings of guilt as to the aforementioned trial/hearing specifications/charges of being discourteous and inattentive (finding Plaintiff not guilty of failing to report to duty/assignment) and his recommendation of <u>DISMSSAL</u> as penalty for same. *Annexed hereto and made a part hereof as Exhibit "K" is a copy of Karopkin's findings of guilt and recommendation of penalty of Dismissal.*

148.    That upon receipt of Karopkin's proposed findings of guilt and recommendation of DISMISSAL as penalty therefor, and prior to Defendant Kelly's approval/adoption/issuance/ordering of the findings of guilt and penalty of DISMISSAL against Plaintiff, by counsel, Plaintiff submitted, as he is entitled to do, a response to Karopkin's proposed findings of guilt and recommendation of DISMISSAL as and for a penalty against Plaintiff herein and submitted same to Defendant Kelly.

149.    To that end, on February 27, 2013, by counsel, Plaintiff submitted to Defendant Kelly his opposition to Karopkin's findings of guilt and penalty recommendation of DISMISSAL and pointed out to Defendant Kelly the errors of law, abuse of discretion, disproportionate penalty, denial of admitting into evidence such evidence of Plaintiff's justification, defense and/or mitigation and/or the unlawful denial of Plaintiff's right to a fair trial, to due process, to defend himself and to confront the witnesses against him.  In addition, Plaintiff requested that Defendant Kelly reject Defendant Karopkin's findings of guilt and recommendation of the penalty of DISMISSAL. *Annexed hereto and made a part hereof as Exhibit "L" is a copy of Plaintiff's February 27, 2013 Memorandum In Response to Defendant Commissioner Kelly.*

150.    That <u>less than one month</u> after filing and serving the aforementioned Second Amended Complaint against Defendants, and <u>approximately one week after</u> serving the foergoing response to Defendant Kelly as and for a response to Karopkin's findings of guilt and penalty recommendation of DISMISSAL, on or about March 6, 2013, Defendants issued Specifications and Charges against Plaintiff for the aforementioned alleged failure to report a general, non-specific allegation of alleged police officer corruption from back in November 2011 for which he was the subject of the aforementioned GO 15 investigation and, further brought

41

charges/specifications against him for allegedly being discourteous to another officer allegedly back in September 2012 when that other officer threatened to assault Plaintiff. *Annexed hereto and made a part hereof as Exhibit "M" is a copy of said March 6, 2013 Specifications/Charges against Plaintiff.*

151.    Then, by a signature dated March 21, 2013, <u>less than one (1) month after Plaintiff submitted his opposition to Karopkin's findings of guilt and recommendation of the penalty of DISMISSAL to Defendant Kelly, and, approximately one and one half (1 ½) months after Plaintiff filed and served his Second Amended Complaint,</u> Defendant Kelly, ignoring the law and rules of evidence and in further denial of Plaintiff's right to a fair trial, to present evidence on his own behalf, to confront the witnesses against him and to present evidence to establish justification and/or mitigation for the conduct alleged, and, ignoring the improper, abuse of discretion and/or unlawfully disproportionate sentence in comparison to the offenses charged and adjudicated, approved Karopkin's findings of guilt and ordered that Plaintiff be sentenced to DISMISSAL. <u>See</u> Exhibit "K", above.

152.    That Defendant Kelly should have rejected Karopkin's findings of guilt and recommendation of DISMISSAL as penalty because Karopkin did not consider the unlawful hostile work environment and unlawful discrimination/retaliation against him by these officers as an affirmative defense to the charges or as a mitigating factor in the penalty phase and, as such, his findings and recommendation are in error of law, legally flawed and, as such, cannot and should not be relied upon by Defendant Kelly as the ultimate decision maker. <u>See</u> <u>id</u>.

153.    Plaintiff went on to set forth to Defendant Kelly the fact that there was not a single shred of evidence that any disciplinary action was taken by Defendants City and/or NYPD against a single officer that caused these unlawful acts to be visited upon Plaintiff and that this

was a factor that Karopkin as the trier of fact in the Departmental Trial/Hearings should have considered but simply did not in assessing guilt, mitigation, defense and/or assessing the penalty against Plaintiff therein. See Exhibit "L", above.

154.    That pursuant to his approval and order dated March 21, 2013, which Plaintiff received on or about March 28, 2013, Defendant Kelly improperly, wrongfully and unlawfully, and in further unlawful discrimination, hostile work environment and/or retaliation against Plaintiff, ordered and approved Karopkin;s' findings of guilt as to the charges of being discourteous to Defendants Margolis, McEvoy and Callahan and of being inattentive on duty and further ordered and approved that, as punishment for same, Plaintiff be sentenced to DISMISSAL with one year abeyance subject to discretionary dismissal, suspension of 30 days and forfeiture of 20 vacation days. See Exhibit "K", above.

155.    That in accordance with Defendant Kelly's approval of Karopkin's findings of guilt and recommendation of the penalty of DISMISSAL, on or about March 25, 2013, the Defendants suspended Officer Rigaud herein for thirty days, to wit: from March 26, 2013 to April 24, 2013. *Annexed hereto and made a part hereof as Exhibit "N" is a copy of said suspension.* That during said suspension on March 25, 2013 whereby Plaintiff had to turn in all of his property to Defendants, Defendant Conners unlawfully harassed, was hostile against and discriminated against Plaintiff because of his religion by stating to him, in sum and substance: "Why aren't you wearing your (Muslim) beard? You're not going to blow anything up are you?"

156.    Pursuant to Defendants' own rules, policies and procedures, any officer on suspension is deemed a non-officer and is not subject to be given any orders and, as such, is not obligated to obey or comply with and is not subject to any such orders until he or she returns to work and reassumes full active duty/status employment after the suspension is over.

43

157.    Thereafter, in further unlawful harassment, discrimination and retaliation against Plaintiff, and in an effort to unlawfully terminate Plaintiff without cause since Defendant Kelly adopted, approved and ordered Plaintiff's dismissal, Defendants engaged in a barrage of harassing telephone calls in their effort to have Plaintiff report to work before the suspension period was over so that once he arrived at work, they could re-instate him and then turn right around and arbitrarily, and/or without cause, terminate him when they knew his suspension period was not finished, that they were not allowed to give him any orders to report to work nor any orders to obey and when they knew he was in full compliance with the March 25, 2013 suspension and did not do anything to give cause for his termination.

158.    To that end, on or about March 28, 2013, while Plaintiff was suspended and not subject to be given any orders by Defendants, Defendants, in an effort to unlawfully terminate Plaintiff while he is on this Dismissal with one year abeyance subject to discretionary dismissal, unlawfully called Plaintiff and unlawfully ordered him for no reason to report to psych services within the Department when they knew his suspension was not over and he was not due to report back to work.

159.    Again, on or about April 1, 2013, Defendants unlawfully called Plaintiff in the same effort to unlawfully order him to report to Defendants' psych services while Plaintiff was still on suspension, while he was not due to report back to full duty status and while he was in compliance with his suspension and did nothing to cause him to have to report to psych services.

160.    That, in exercising his right to register complaints about the conditions of the workplace and, in particular, to register complaints about the unlawful conduct by Defendants against him, Plaintiff, on April 1, 2013, filed another EEOC Charge of Discrimination, under

44

same EEOC Charge Number 520-2013-00803, asserting the Defendants' continuing, repeated and pervasive unlawful retaliation and hostile work environment against him. *Annexed hereto and made a part hereof as Exhibit "O", is a copy of Plaintiff's April 1, 2013 EEOC Charge under Charge Number 520-2013-00803.*

161.    In the foregoing April 1, 2013 EEOC Charge, under Charge number 520-2013-00803, Plaintiff set forth and asserted specific instances and occurrences of the Defendants continuing unlawful retaliation and hostile work environment against him. In same, Plaintiff sets forth that he is an African American male of Haitian origin and that he is being retaliated against by Defendants for his complaints of the sexual harassment of his female co-workers and, specifically, in retaliation for Plaintiff's participation in an internal NYPD complaint and testimony as a witness on behalf of his female co-worker(s). See Exhibit "O", above. Plaintiff further set forth that after he participated in the foregoing, he had been harassed by his supervisors, denied his vacation and denied his regularly scheduled days off even though he was the most senior employee on his shift. See id. Plaintiff further set forth that he perceived Defendants' conduct and retaliation to be a hostile work environment against him. See id.

162.    In said April 1, 2013 EEOC Charge, Plaintiff detailed that he then registered/made a complaint about the unlawful harassment to the NYPD's internal "EEO" and that, subsequent to same, his supervisors, instead of addressing his complaints, retaliated against him for his complaints. Id. Further, Plaintiff detailed in same EEOC Charge that on or about September 4, 2012, Defendant Camacho harassed him by texting him for hours telling Plaintiff that his work was "doo doo", "Ka Ka" and that what others were saying about Plaintiff was right and Plaintiff did not belong on the job. Id. Then on September 7, 2012, Defendant Camacho called a Lieutenant Mangino regarding Plaintiff's regularly scheduled days off and Plaintiff was

subsequently removed from his regular days off whereby Defendants gave Plaintiff's days off to a rookie/junior officer and switched Plaintiff's days off. See id. Defendant Camacho cursed at Plaintiff and threatened his safety by pushing Plaintiff against a desk. See id.

163.    In same April 1, 2013 EEOC Charge, Plaintiff further set forth and detailed that in late December 2012, the aforementioned Lieutenant Mangino denied Plaintiff vacation even though Plaintiff was the most senior officer and was entitled to his vacation pick as the most senior officer. See id. Plaintiff also set forth that on January 20, 2013, he participated in another officer's internal NYPD complaint and that, subsequent to same, on March 7, 2013, Plaintiff received charges of allegedly being discourteous to Defendant Camacho and allegedly failing to notify IAB about allegations of corruption and misconduct. See id. In same EEOC Charge, Plaintiff also detailed Defendant Conners' aforementioned unlawful and discriminatory statement to Plaintiff asking Plaintiff why he took off his (Muslim) beard and asking Plaintiff if Plaintiff was going to blow anything up. See id. Lastly, Plaintiff further set forth the Defendants' improper, unwarranted and unlawful ordering of Plaintiff to report to psych services on April 1, 2013 when Plaintiff was already suspended and not subject to same. See id.

164.    In response to Plaintiff's compliance with his suspension and given that Defendants cannot order him to report back to them for any reason or duty before his suspension is over, and in further unlawful retaliation, Defendants, on or about April 2, 2013, one (1) day after Plaintiff filed the foregoing April 1, 2013 EEOC Charge of Discrimination against Defendants herein, re-suspended (which the Defendants have no such policy for) Plaintiff for not obeying the unlawful order to report to psych services when Plaintiff was on suspension and not subject to same.

165.    In addition, as Defendants have a policy whereby an officer on suspension can sign a waiver whereby said officer waives having to report on a weekly basis to some precinct or station while on suspension and need not report until after the suspension time period is over, Plaintiff signed such waiver and was not obligated to report to Defendants at any station or precinct or facility while he was on suspension.

166.    Then on April 11, 2013, ten (10) days after Plaintiff filed the April 1, 2013 EEOC Charge against Defendants, in furtherance of their unlawful conduct and treatment of Plaintiff, and in an effort to unlawfully terminate him while in this Dismissal, Defendants filed official Specifications/Charges against Plaintiff for allegedly failing to comply with Defendants' unlawful order to report to psych services when Plaintiff was on suspension, not subject to any orders, not subject or obligated to report to Defendants and not due to report back to work on full duty/status. *Annexed hereto and made a part hereof as Exhibit "P" is a copy of said April 11, 2013 Specifications/Charges against Plaintiff.*

167.    On April 25, 2013, twenty four (24) days after Plaintiff filed the April 1, 2013 EEOC Charge against the Defendants, when Plaintiff reported back to work as per the end of his suspension, he was informed by Defendants, in an effort by Defendants to unlawfully terminate him while he is on this Dismissal, that he had been re-suspended again and was ordered not to report back to work and to remain suspended until May, 2, 2013.

168.    On May 2, 2013, one (1) month and one (1) day after Plaintiff filed the April 1, 2013 EEOC Charge against Defendants, when Plaintiff reported back to work as his re-suspension time period was over, Defendants re-suspended Plaintiff again now for a third time.

47

169.    That on or about April 23, 2013, Defendants, in defense of the within action before this Eastern District of New York, had filed a motion to dismiss the Second Amended Complaint and, on or about May 14, 2013, via counsel, Plaintiff, in exercising his right to register complaint about the workplace and his right to seek compensation for the unlawful treatment against him, served opposition papers on the Defendants requesting that the Court to deny Defendants' motion to dismiss.

170.    That in further unlawful hostile work environment, unlawful discrimination and unlawful retaliation, and in furtherance of the Defendants' efforts to unlawfully terminate Plaintiff, on or about May 10, 2013 [a]nd May 15, 2013 - one (1) day after Plaintiff served his opposition papers in reply to Defendants' motion to dismiss and one and one half (1 ½ ) months after Plaintiff filed the April 1, 2013 EEOC Charge against Defendants, Defendants forced, ordered and compelled Plaintiff to report to psych services when same was unwarranted and when Plaintiff was then serving his third suspension, was not obligated to report and was not yet due to report back to work on full duty status.

171.    That two (2) days after Plaintiff served the foregoing opposition papers and one (1) month and fifteen (15) days after Plaintiff filed the April 1, 2013 EEOC Charge against Defendants, on or about May 16, 2013, Defendants made Plaintiff the [s]ubject of another GO 15 investigation regarding the very pornography that Plaintiff found on other officers/other officers' computers that Plaintiff previously reported as a witness to IAB.

172.    That six (6) days after being made the subject of the aforementioned GO 15 investigation about the pornography that Plaintiff found on other officers/other officers' computers and reported to IAB, eight (8) days after Plaintiff served his opposition papers to

48

Defendants' motion to dismiss, and, <u>one (1) month and three (3) weeks after Plaintiff filed the April 1, 2013 EEOC Charge against Defendants</u>, the Defendants verbally/orally terminated Plaintiff on or about May 22, 2013 with no reason, justification, explanation and/or cause and with no written termination letter or written justification/explanation/reason/cause for same.

173.    That on or about June 6, 2013, Plaintiff filed another EEOC Charge of Discrimination against the Defendants and, in particular, set forth the unlawful findings of guilt and recommendation of DISMISSAL as penalty therefor as a result of the administrative trial/hearings     before     Karopkin     and     Defendant     Kelly's     improper/unlawful approval/adoption/issuance/ordering of same, as well as the incidents set forth above that occurred from in or about March 2013 to his unlawful termination on or about May 22, 2013 herein. *Annexed hereto and made a part hereof as Exhibit "Q" is a copy of the June 6, 2013 EEOC Charge of Discrimination against Defendants.*

174.    In said June 6, 2013 EEOC Charge, Plaintiff set forth and detailed the wrongful adoption by Defendant Kelly of the severe and more severe than normal/disproportionate penalty of DISMISSAL Plaintiff was given as penalty for being found guilty of being discourteous and for being inattentive by Karopkin at the NYPD Departmental trial/hearings when other officers would not receive such a penalty for similar offenses. See Exhibit "Q", above. Plaintiff further detailed how Karopkin engaged in disparate and discriminatory application of the rules against Plaintiff and other (minority) officers like Plaintiff and how the adoption of his findings and penalty recommendation was wrong/improper as Karopkin never mentioned in his report to Defendant Kelly what Plaintiff was being subjected to and was the victim of at the 103rd precinct. See id.

175.    In said June 6, 2013 EEOC Charge, Plaintiff also set forth how he was being unlawfully punished by Defendants for filing complaints, including the within action, against the Defendants named herein and for filing a complaint and for being a whistleblower in reporting the Advocate's Office and Prosecutor Vivian Joo in particular for tampering with evidence. See id.    Plaintiff further complained about being punished/retaliated against for being a whistleblower by reporting to IAB the pornography that he found while working as a computer tech at One Police Plaza. See id.

176.    Plaintiff also set forth and detailed the Defendants unlawful/improper suspension of Plaintiff in March 2013, then April 2013 and again on May 2, 2013. See id. Plaintiff set forth how other officers were not called back while out on suspension to be offered money to come back to work to speak with a NYPD psychologist at Lefrak Medical Division, as was Plaintiff by the Defendants, and went on to list some of these other officers who were not, including, but not limited to: Officer Jasmine Insorule, Officer James Washington, Officer Johnson, Office Michele Sharp, and Officer Yankey – all from the 103rd precinct—as well as others from other precincts. See id.    Plaintiff further requested documentation regarding his suspensions and Defendants denied him same. See id. Plaintiff was offered money to come into Lefrak Medical division by Doctor Ann Penque and Sergeant Davor Milevoj and gave him the option to come in or not and Plaintiff, in fear for his safety and feeling that something was wrong with what the Defendants were doing/trying to do to him, Plaintiff opted not to go. See id.    Plaintiff also detailed how after he was suspended again on May 2, 2013, he was sent by Defendants to IAB where he reported.    IAB informed Plaintiff that IAB had no case against Plaintiff and that the Department's Advocate's Office was making him report to IAB. See id.

177.   In said June 6, 2013 EEOC Charge, Plaintiff also detailed and registered complaints about being forced to report to psych services on May 10, 2013 and May 15, 2013; how he was made, on May 16, 2013, the subject of a GO 15 investigation about the pornography that he reported to IAB as a witness having discovered same at One Police Plaza and how he was informed on May 22, 2013 that he was terminated by the Defendants herein. See id. Further, when Plaintiff asked the reason why he was being terminated, Defendants informed him that they did not know why and Plaintiff would have to do an Article 78 to find out. See id.

178.   That the EEOC issued Plaintiff a Dismissal and Notice of Right to Sue Letter for his April 1, 2013 and June 6, 2013 EEOC Charges by Notice dated July 22, 2013 which Plaintiff received on July 24, 2013. *Annexed hereto and made a part hereof as Exhibit "R" is a copy of said EEOC Notice.* In same, the EEOC sets forth and states that said Notice is given as Plaintiff, as the Charging party, has a pending lawsuit in Federal Court. See id.

179.   That during the course of the foregoing continued course of retaliation, hostile work environment and discrimination against the Plaintiff in prosecuting the Plaintiff, Defendants each individually and acting in concert with the other, personally appeared, presented and testified against Plaintiff in furtherance of their unlawful discrimination against Plaintiff based upon Plaintiff's race, national origin, religion and disability and in further retaliation for complaining about same unlawful conduct and hostile work environment.

180.   That based upon information and belief, a number of NYPD Police Officers of a different race, color, ethnicity, national origin, who are not disabled and/or who did not exercise their rights to register complaints about the conditions of the workplace, who were charged with, found guilty of and/or actually admitted to more serious/egregious offenses than being allegedly

discourteous and inattentive including, but not limited to, offenses such as use and/or possession of a controlled substance, were written up, disciplined, prosecuted, punished, penalized and/or sentenced in the same fashion as Plaintiff herein and/or were they terminated from their employment as Defendants did to Plaintiff herein.

181.    That Defendants unlawfully subjected Plaintiff to unlawful disparate treatment as other New York City Police Officers of different race, color, ethnicity, national origin than Plaintiff, and, who are not disabled and/or did not exercise their rights as did Plaintiff to register complaints about the conditions of the workplace are/were treated differently and/or more favorably than Plaintiff after being accused and/or after being found guilty for more egregious and actually criminal offenses in that these other officers received better dispositions/punishment; were not fired from the Police Department; were restored to duty; received more reasonable and/or favorable treatment than did the Plaintiff and/or did not have their rights denied as was suffered by the Plaintiff herein.  For example based upon information and belief:

1.    Police Office Joshua Hammer in 2011 was found guilty of actual possession and/or use of anabolic steroids and for failure to notify his commanding officer of a change of residence and was sentenced to suspension from the New York City Police Department for a period of Thirty (30) days;

2.    Police Officer Paul Gebbia in 2010 was found guilty of ingesting an anabolic steroid or a dietary supplement and was sentenced to a period of suspension;

3.    Police Officer Sunil Rogoobeer in 2009 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to a period of suspension from the New York City Police Department;

4.    Detective Chris Burns in 2009 was found guilty of actual possession and/or use of anabolic steroids which resulted in a positive test for the anabolic steroid, possessed a duplicate New York City Police Department Shield and Failure to safeguard

52

his service and off duty firearms and was sentenced to suspension from the New York City Police Department;

5.    Lieutenant Pasquale Capuano in 2008 actually admitted to ingestion of anabolic steroids and was sentenced to forfeiture of Thirty (30) vacation days; and

6.    Nikolaos Kontarinis in 2008 was found guilty of ingesting an anabolic steroid and was sentenced to forfeiture of Thirty Two (32) vacation days and Two Hundred and Nineteen (219) days suspension.

182.    That, based upon information and belief, in 1999, a Federal lawsuit was commenced by Twenty-Two individuals and the New York City Police Department Latino Officers' Association alleging discriminatory and disparate application of the New York City Police Department's disciplinary rules, procedures and punishments of Latinos, Afro-Americans and other minority police officers by Defendants City and NYPD.

183.    Based upon information and belief, the Honorable Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York certified the foregoing lawsuit as a class action which included all African-American and Hispanic Police Officers and certain civilian employees of the New York City Police Department from 1995 forward.

184.    Based upon information and belief, that lawsuit alleged that Blacks and Latino Officers were less likely to be acquitted and have their charges dismissed than Whites at Departmental Hearings.

185.    Based upon information and belief, that lawsuit alleged that Afro-Americans were Sixty (60) percent more likely and Hispanics were Thirty (30) percent more likely to be found guilty at Departmental trial than Whites.

186.   Based upon information and belief, that lawsuit alleged that in terms of overall dispositions, charges against Whites were more often dismissed, or resulted in findings of not guilty, while Afro-Americans and Latinos were far more often found guilty.

187.   Based upon information and belief, that lawsuit further alleged that when findings of guilt were handed down, Afro-Americans and Hispanics were terminated from the police force with greater frequency that White officers, who received less penalties/punishment.

188.   Based upon information and belief, the Defendants City and NYPD settled the foregoing lawsuit with the Plaintiffs of that lawsuit in which, the Defendants provided a monetary award to the Plaintiffs of that lawsuit and members of the class and more significantly, Defendants City and NYPD agreed to an injunctive relief that the Defendants would be enjoined from discriminating based upon race, color, national origin, or ethnicity in the future.

189.   Based upon information and belief, pursuant to the settlement of that class action lawsuit, Defendants City and NYPD were obligated to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being investigated, charged or penalized in a discriminatory manner.

190.   Based upon information and belief, the settlement agreement contained specific steps that Defendants City and NYPD would take to establish procedures to prevent discrimination.

191.   This Plaintiff and other Afro-American and minority Officers, similarly situated as this Plaintiff, are members of the Class that the foregoing settlement agreement/stipulation was designed to protect.

54

192.    Plaintiff is an Afro-American/African American Officer and, as such, is a member of that class that the foregoing lawsuit and settlement agreement was intended to futuristically protect and, as such, Plaintiff has standing to seek to have a Court compel the Defendants to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being disciplined, investigated, charged, prosecuted and/or penalized in a discriminatory manner and to comply with the settlement agreement's specific steps that Defendants City and NYPD should have undertaken to establish procedures to prevent discrimination.

193.    Based upon information and belief, the Defendants City and NYPD did not establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and/or Latino/Hispanic and/or minority members of the Police Department are being disciplined, investigated, charged, prosecuted and/or penalized in a discriminatory manner as outlined in the stipulation of settlement of the class action lawsuit.  Assuming that same Defendants attempted to establish said review unit, their efforts fell short of the terms and conditions outlined in same stipulation and this Plaintiff, and other Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

194.    Based upon information and belief, the Defendants City and NYPD did not establish specific steps that the City of New York and New York City Police Department would take to establish procedures to prevent discrimination and assuming that same Defendants attempted to, their efforts fell short of the terms and conditions outlined in same stipulation and

55

this Plaintiff, and other Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

195.    That had the Defendants complied with the aforementioned stipulation of settlement and its terms and conditions, had the Defendants established a review unit, had the Defendants properly and/or adequately established a review unit and/or had the review unit, if so established, was performing its duties as per the stipulation of settlement to try and prevent the unlawful discrimination and disparate treatment of African American and/or other minority police officers, than the review unit and the Defendants would have and should have detected, stopped, prevented and/or remedied the unlawful discrimination, retaliation, hostile work environment and disparate treatment by Defendants against Plaintiff herein; particularly in reference to the unlawful disparate treatment by Defendants against Plaintiff related to their charges, investigation, prosecution, penalty, suspensions, dismissal and termination of Plaintiff herein when non-minority/non-Afro-American officers were not treated as Plaintiff herein.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. SECTIONS 12102, 12111(8), 12112(A), TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. SECTIONS 12111, ET SEQ.

196.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint numbered "1-195" with the same force and effect as if set forth at length herein.

197.    Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq.

198.    Plaintiff was employed with the Defendants since 2002 to on or about May 22, 2013.

199.    Plaintiff is disabled as defined by the Americans with Disabilities Act. Plaintiff suffers from and has the mental impairment/disability of Attention Deficit Disorder ("ADD") and said disability/mental impairment substantially limits one or more major life activities for Plaintiff including, but not limited to: concentrating, thinking and/or communicating.

200.    Plaintiff, up until the time of Defendants' unlawful termination of him on or about May 22, 2013, was and had been and is able to perform all the duties of a New York City Police Officer with reasonable accommodation for his disability of ADD.

201.    Plaintiff was and still is otherwise able to perform the essential functions of a New York City Police Officer with reasonable accommodation for his disability of ADD.

202.    Defendants are an employer as defined by the Americans with Disabilities Act, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq.

203.    Plaintiff was employed by Defendants for all relevant periods herein.

204.    Defendants City and NYPD are the employers of the other named Defendants herein.

205.    The other named Defendants and "JANE AND JOHN DOE" are agents, employees, licensees, police officers and/or servants of Defendants City and NYPD.

206.    Defendants City and NYPD are liable for the intentional and unlawful discriminatory acts, conduct, treatment, practices and/or policies that were unlawfully and discriminatorily applied to Plaintiff.

207.    Defendants violated the Americans with Disabilities Act by being aware of Plaintiff's disability and, after being requested to make reasonable accommodation to the Plaintiff, Defendants intentionally and unlawfully refused to provide such reasonable accommodation.

208.    Further, as a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.    Plaintiff suffered damage to his pension and/or retirement benefits.

b.    Plaintiff seeks compensation for all lost wages and benefits, plus prejudgment interest at the prevailing rate.

c.    Plaintiff suffers emotional distress both intentional and negligent.

d.    Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of the ADA, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq.

f.    Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

g.    Defendants' conduct was an intentional and willful violation of the ADA, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq.

58

h.      Plaintiff is entitled to an award of liquidated damages within the meaning of the

ADA, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title I of the Americans

with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq.

209.    Plaintiff claims damages herein.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C.SECTIONS 1981, 1981(a), & 2000e. seq.

210.    Plaintiff repeats and re-alleges each and every allegation set forth above in

paragraphs of the complaint number "1" to "209" with the same force and effect as if set forth at

length herein.

211.    Defendants City and NYPD are employers within the meaning of Title VII of the

Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981,

1981(a), 42 U.S.C. Section 2000e, *et. seq.*

212.    Defendants' unlawful, discriminatory, retaliatory, abusive and/or hostile

conduct/work environment and treatment against Plaintiff because of his disability, race, color,

religion, national origin and in retaliation for Plaintiff's exercise of his right to engage in the

protected activity of registering complaints about the workplace, deprived Plaintiff of his right to

make and enforce contracts to the full and equal benefit of Defendants' regulations and all laws

and proceedings for the security of Plaintiff's employment in violation of Title VII of the Civil

Rights Act, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3) and 2000(e)-2(a)(1).

213.    Defendants, their officers, agents, servants, and/or employees are responsible for

the intentional and unlawful/discriminatory/hostile/retaliatory acts, conduct, treatment, practices

and /or policies, and for creating and/or fostering a hostile work environment that caused Plaintiff to suffer and sustain damages.

214.    Defendants, their officers, agents, servants, and/or employees are/were, at all times herein mentioned, acting within the scope of their employment.

215.    Defendants City and NYPD are liable for said Defendants' intentional, unlawful, discriminatory, hostile and/or retaliatory acts, conduct, treatment, practices and/or policies against Plaintiff.

216.    That during the course of his employment, Plaintiff engaged in the protected activity of registering complaints to Defendants about the hostile and unlawful work environment/conditions with his last complaint being made before and subsequent to each and every unlawful act and of mistreatment by the Defendants towards the Plaintiff.

217.    Defendants, their officers, agents, servants, and/or employees discriminated in the workplace against Plaintiff because of his race, color, national origin, religion, disability and in unlawful retaliation to Plaintiff's complaints about the hostile work environment/conditions.

218.    Defendants do not treat other non-disabled group(s) similarly situated as Plaintiff, as they treated the Plaintiff.

219.    Defendants do not treat other groups who do not engage in the protected activity of registering complaints about work conditions/environment, similarly situated as Plaintiff, as they treated Plaintiff.

220.    Defendants do not treat other non-Afro-American/African American group(s) similarly situated as they treated Plaintiff.

221.    Defendants do not treat other non-Muslim and/or non-Haitian group(s) similarly situated as they treated Plaintiff.

222.    That at all times herein mentioned, Defendants treated Plaintiff with unlawful disparate treatment.

223.    Defendants City and NYPD are liable for said Defendants' intentional and unlawful and disparate and discriminatory acts, conduct, treatment, practices and/or policies that were intentionally, hostilely, unlawfully, retaliatory and discriminatorily applied to Plaintiff.

224.    Defendants City and NYPD knew of said Defendants' unlawful, discriminatory, disparate, retaliatory, hostile and/or abusive acts, conduct, treatment, practices, and/or policies against the Plaintiff, and/or, had same Defendants exercised due care, they would have discovered same.

225.    Defendants failed to take remedial and/or corrective action to address the unlawful, retaliatory, hostile, disparate, abusive and/or discriminatory practices the Defendants caused to be visited upon the Plaintiff.

226.    Defendants unlawfully created and/or fostered a discriminatory, retaliatory, disparate, hostile and/or abusive work environment against the Plaintiff based upon his disability, race, color, national origin, religion and/or his exercise of a protected activity of complaining about the hostile work environment/conditions.

227.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.    Plaintiff suffered damage to his employment, title, position, rank, job, salary, wages, compensation, pension and/or retirement benefits;

b.    Plaintiff suffered and is suffering psychological emotional distress;

c.    Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of Title VII of the Civil Rights Act;

d.    Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

e.    Defendants' conduct was an intentional and willful violation of Title VII of the Civil Rights Act.

f.    Plaintiff is entitled to an award of liquidated damages within the meaning of Title VII of the Civil Rights Act.

228.    Plaintiff claims damages herein.

## PENDENT STATE CLAIMS

229.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1"to "228" with the same force and effect as if set forth at length herein.

230.    Defendants are an employer within the meaning of the New York Human Rights Law, New York Executive Law Article 15, and New York Executive Law Sections 290-297.

231.   Plaintiff was an employee within the meaning of the New York Human Rights Law, New York Executive Law Article 15 and New York Human rights Law Sections 290-297.

232.   In 2008 when Plaintiff was official diagnosed with Attention Deficit Disorder, Plaintiff, informed the Defendants of same diagnosis and requested reasonable accommodation.

233.   Based upon the diagnosis, Plaintiff was and is disabled and entitled to his requested reasonable accommodation as defined by the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

234.   Defendants never provided the Plaintiff with reasonable accommodation as requested and as they are obligated to do.

235.   Plaintiff is further a member of a protected class as he is an Afro-American/African American male of Haitian national origin, is black in color and is of the Muslim religious faith/religion and is a member of a protected class under/pursuant to New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

236.   As set forth above, Defendants unlawfully discriminated against Plaintiff, created and/or fostered a hostile work environment based upon his race, color, national origin, religion, disability and further unlawfully retaliated against him for engaging in protected activity and, as such, are liable for their intentional and willful violations of the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

237.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

63

a.      Plaintiff suffered damage to his employment, title, position, rank, job, salary, wages, compensation, pension and/or retirement benefits;

b.      Plaintiff suffered and is suffering psychological emotional distress;

c.      Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297;

d.      Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action;

e.      Defendants' conduct was an intentional and willful violation of New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297;

f.      Defendants' conduct was an intentional and willful violation of New York Human Rights Law, New Executive Law Article 15 and New York Executive Law Sections 290-297.

g.      Plaintiff is entitled to an award of liquidated damages within the meaning of New York Human Rights Law, New Executive Law Article 15 and New York Executive Law Sections 290-297.

238.    Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

239.    Plaintiff claims damages herein.

64

## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

240.   Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1" to "239" with the same force and effect as if set forth at length herein.

241.   Defendants, their officers, agents, servants, and/or employees are, at all time herein mentioned, agents, servants and/or employees acting within the scope of their employment.

242.   Defendants engaged in extreme and outrageous conduct, intentionally, recklessly, and/or negligently causing Plaintiff to suffer severe emotional distress.

243.   As a direct result of Defendants' extreme and outrageous conduct, Plaintiff was caused to suffer and sustain psychological injuries including, but not limited to, humiliation, mental pain, anguish, pain and suffering, and emotional distress (both intentional and negligent).

244.   As a direct result of Defendants' extreme and outrageous conduct, Plaintiff claims damages for the injuries set forth above.

245.   Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

246.   Plaintiff claims damages herein.

## AS AND FOR A CAUSE OF ACTION FOR THE UNLAWFUL, IMPROPER AND/OR INCORRECT APPROVAL/ORDER OF DEFENDANT NEW YORK CITY POLICE DEPARTMENT POLICE COMMISSIONER RAYMOND W. KELLY TO DISMISS PLAINTIFF.

247.    Plaintiff repeats, repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1" to "246" with the same force and effect as if set forth at length herein.

248.    That at all times herein mentioned, Defendant Kelly, in his official capacity as and as Police Commissioner of/for Defendants City and NYPD, received findings of guilt, as set forth in detail above, against Plaintiff from a Deputy Commissioner of Trials for the New York City Police Department and the accompanying recommendation of DISMISSAL made by said Deputy Commissioner of Trials and Defendant Kelly approved/issued/ordered said penalty of DISMISSAL against Plaintiff herein for having been found guilty of offenses of being discourteous and inattentive.

249.    That at all times herein mentioned, Defendant Kelly, in his official capacity as and as Police Commissioner for/of Defendants City and NYPD, is under a duty, and, in particular, a duty to Plaintiff herein, to review any such findings of guilt and recommendation of penalty issued by any such Deputy Commissioner of Trials against a NYPD police officer to ensure that same is in accordance with the laws of New York and the Constitutions of the State of New York and the United States, to ensure that same was not made in bad faith, to ensure that same was not made based upon some impermissible/improper reason, to ensure that same was not made in an abuse of discretion, to ensure that any penalty is not disproportionate to the offense adjudicated, to ensure that same does not shock one's sense of fairness when there is no grave moral turpitude and no grave injury to the agency involved or to the public, to ensure that

66

same was not affected by an error of law, to ensure that same was supported by substantial evidence and to ensure that Plaintiff, as the Defendant in the administrative hearing, was afforded a fair trial, was afforded due process and was afforded the right to present evidence on his behalf and to confront the witnesses against him.

250.    That at all times herein mentioned, Defendant Kelly, in his official capacity as and as Police Commissioner for/of Defendants City and NYPD, in approving/issuing/ordering the findings of guilt and recommendation of penalty of DISMISSAL against Plaintiff herein for adjudicated offenses of being discourteous and inattentive, failed in his duty as Police Commissioner to review said findings and recommendation and/or to thoroughly, properly and/or adequately review same.

251.    That at all times herein mentioned, Defendant Kelly, in his official capacity as and as Police Commissioner for/of Defendants City and NYPD, in approving/issuing/ordering the findings of guilt and recommendation of penalty of DISMISSAL against Plaintiff herein for adjudicated offenses of being discourteous and inattentive, failed in his duty as Police Commissioner to ensure that same is in accordance with the laws of New York and the Constitutions of the State of New York and the United States, to ensure that same was not made in bad faith, to ensure that same was not made based upon some impermissible/improper reason, to ensure that same was not made in an abuse of discretion, to ensure that any penalty is not disproportionate to the offense adjudicated, to ensure that same does not shock one's sense of fairness when there is no grave moral turpitude and no grave injury to the agency involved or to the public, to ensure that same was not affected by an error of law, to ensure that same was supported by substantial evidence and to ensure that Plaintiff, as the Defendant in the

administrative hearing, was afforded a fair trial, was afforded due process and was afforded the right to present evidence on his behalf and to confront the witnesses against him.

252.    That as a direct and proximate result of Defendant Kelly's failure and breach of his duty that he owes to Plaintiff as one of his police officers, Defendant Kelly set Plaintiff up and allowed, permitted, created, facilitated and/or caused Plaintiff to be wrongfully suspended, re-suspended multiple times, brought up on additional charges, be made the subject of GO 15 investigations, be on modified/restricted duty, be forced to report to psych services and, ultimately, to be terminated by Defendants without cause, justification, reason, explanation and to be so terminated arbitrarily, capriciously, maliciously, unlawfully, wrongfully and/or in further unlawful hostile work environment, unlawful discrimination and/or unlawful discrimination and disparate treatment of Plaintiff herein.

253.    That as a direct and proximate result of the foregoing, Plaintiff was caused to suffer and continues to suffer and sustain injuries/damages including, but not limited to: loss of employment, job, title, rank, position, salary, wages, compensation, pension, retirement benefits, medical benefits and other economic damages as well as psychological injuries including, but not limited to: humiliation, mental pain, anguish, pain and suffering, and emotional distress (both intentional and negligent).

254.    That as a direct and proximate result of the foregoing, Plaintiff claims damages for the injuries set forth above.

255.    Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

256.    Plaintiff claims damages herein.

68

## DEFENDANTS' FAILURE TO TRAIN, SUPERVISE, MANAGE &/OR CONTROL

257.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1" to "256" with the same force and effect as if set forth at length herein.

258.    Defendants City, NYPD and Kelly have/had a duty to supervise, manage, oversee, maintain, control and/or train their employees, servants, police officers and/or agents.

259.    Defendants New York City Police Department Commissioner Raymond W. Kelly, New York City Police Department Lieutenant Jason Margolis, New York City Police Department Deputy Inspector Charles McEvoy, New York City Police Department Sergeant Donald Kipp, New York City Police Department Captain Timothy Dheedene, New York City Police Department Lieutenant Christopher Garcia, New York City Police Department Sergeant Michael Zanelone, New York City Police Department Sergeant Jose Camacho, New York City Police Department Sergeant Phillip Conners, New York City Police Department Officer Theresa Callahan, and "JOHN DOES" and "JANE DOES are employees, servants, police officers and/or agents of the Defendants City and NYPD.

260.    Defendants City, NYPD and Kelly have/had a duty to supervise, manage, oversee, maintain, control and/or train their employees, servants, police officers and/or agents, particularly Defendants Margolis, McEvoy, Kipp, Dheedene, Garcia, Zanelone, Camacho, Conners, Callahan, and "JOHN DOES" and "JANE DOES.

261.    Defendants City, NYPD and Kelly are negligent in that they failed their duty to supervise, manage, oversee, maintain, control and/or train their employees, police officers, servants and/or agents, particularly, Defendants Margolis, McEvoy, Kipp, Dheedene, Garcia,

Zanelone, Camacho, Conners, Callahan, and "JOHN DOES" and "JANE DOES, so that the Defendants, their employees, agents and/or servants would be aware that it is unlawful to discriminate against Plaintiff, unlawful to create and/or foster a hostile work environment based on his race, color, religion, disability and/or national origin and unlawful to retaliate against Plaintiff for engaging in a protected activity -- in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.SECTIONS 1981, 1981(a), & 2000e. seq. and of the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

262.     Defendants City, NYPD and Kelly's negligence was a direct and proximate cause of the harm/damages/injuries visited upon the Plaintiff herein.

263.     Further, as a direct and proximate result of Defendants City, NYPD and Kelly's negligence, Plaintiff suffered and continues to suffer injuries and/or damages.

264.     That at all times herein mentioned, the Defendants' conduct was an intentional and willful violation of Title VII of the Civil Rights Act, 42 U.S.C. Section 1981, 1981(a), 2000, 2000(e), 2000(e)(3), and 2000(e)-2(a)(1), *et. seq.*, and New York Human Rights Law, New Executive Law Article 15 and New York Executive Law Sections 290-297.

265.     Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

266.     That as a direct and proximate result of the foregoing, Plaintiff claims damages herein.

## BREACH OF CONTRACT

267.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1" to "266" with the same force and effect as if set forth at length herein.

268.    That, upon information and belief, in September 1999, a Federal lawsuit was commenced by Twenty-Two individuals and the New York City Police Department Latino Officers' Association alleging discriminatory and disparate application of the New York City Police Department's disciplinary rules, procedures and punishments of Latinos, Afro-Americans and other minority police officers by Defendants City and NYPD.

269.    Based upon information and belief, the Honorable Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York certified the foregoing lawsuit as a class action which included all African-American and Hispanic Police Officers and certain civilian employees of the New York City Police Department from 1995 forward then employed with the New York City Police Department and those who will be employed by the New York City Police Department as uniformed officers.

270.    Based upon information and belief, that lawsuit alleged that African Americans and Latino Officers were less likely to be acquitted and have their charges dismissed than Whites at Departmental Hearings with the New York City Police Department.

271.    Based upon information and belief, that lawsuit alleged that Afro-Americans were Sixty (60) percent more likely and Hispanics were Thirty (30) percent more likely to be found guilty at the New York City Police Department trials than Whites.

71

272. Based upon information and belief, that lawsuit alleged that in terms of overall dispositions by the New York City Police Department, charges against Whites were more often dismissed or resulted in findings of not guilty while Afro-Americans and Latinos were far more often found guilty.

273. Based upon information and belief, that lawsuit further alleged that when findings of guilt were handed down, Afro-Americans and Hispanics were terminated by the New York City Police Department from said Department with greater frequency than White officers and the White officers received less penalties/punishment.

274. Based upon information and belief, the Defendants City and NYPD settled the foregoing lawsuit with the Plaintiffs of that lawsuit in which, the Defendants provided a monetary award to the Plaintiffs of that lawsuit and members of the class and, more significantly, Defendants agreed to an injunctive relief that the Defendants, City and NYPD would be enjoined from discriminating based upon race, color, national origin, or ethnicity in the future.

275. Based upon information and belief, on or about December 2003, pursuant to the settlement of the foregoing class action lawsuit, Defendants City and NYPD entered into a signed stipulation of settlement – a contract- by the terms and conditions of which the Defendants City and NYPD were obligated to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being investigated, charged or penalized in a discriminatory manner, to wit: a "Disciplinary Review Unit".

276.    That based upon information and belief, pursuant to said contract, the signed stipulation of settlement therein, the Defendants were obligated to establish this "Disciplinary Review Unit" to track and analyze whether minority members of the New York City Police Department, like Plaintiff herein, were being treated in a discriminatory manner when being disciplined as well as the Defendants were to establish an "Advisory Committee" to address employment discrimination and retaliation concerns.

277.    Further, based upon information and belief, pursuant to same contract/stipulation of settlement, the Defendants were to develop a "Know Your Rights" guide to the New York City Police Department discipline system and to enhance existing databases and create new databases and report data thought to be relevant to analyzing whether or not discrimination was continuing on the New York City Police Department discipline system.

278.    Based upon information and belief, on or about September 17, 2004, the District Court entered a judgment and order approving said stipulation of settlement/contract, and its terms and conditions, in the foregoing class action lawsuit.

279.    Based upon information and belief, the settlement agreement/contract contained specific steps that the Defendants City and NYPD would take to establish procedures to prevent discrimination.

280.    This Plaintiff, and other Afro-Americans and/or Latino/Hispanic Officers similarly situated as this Plaintiff, are members of the Class set forth in the foregoing lawsuit and are members of the Class of police officers that the foregoing settlement agreement/stipulation/contract was designed and entered into to protect.

281.    Plaintiff is Afro-American/African American and was an Afro-American/African American Officer who was employed by the NYPD at or subsequent to the foregoing settlement/contractual agreement and, as such, is a member of that Class that the foregoing lawsuit and settlement agreement/contract was intended to futuristically protect and, as such, Plaintiff is a beneficiary of said contract and/or has standing to seek to have a Court compel the Defendants to abide by all of the terms and conditions of same including, but not limited to, compelling the Defendants to establish a review unit to analyze the NYPD's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being disciplined, investigated, charged, prosecuted and/or penalized in a discriminatory manner and to comply with the settlement agreement's specific steps that the City and NYPD should have undertaken to establish procedures to prevent discrimination.

282.    Based upon information and belief, per the terms of the foregoing stipulation/agreement, the Defendants City and NYPD were obligated to establish an "Employment Practice Unit" which essentially was slated to provide and conduct the same and/or similar function as the "Disciplinary Review Unit."

283.    The Defendants City and NYPD breached the contract/stipulation agreement in that the Employment Practice Unit is wholly ineffective, inadequate, inept and did not and does not have an efficient system in place to track and analyze whether minority members of the New York City Police Department are being treated in a discriminatory manner when disciplined.

284.    The Defendants City and NYPD breached the contract/stipulation agreement in that the "Employment Practice Unit" has failed and/or did not track and/or analyze whether

74

minority members of the NYPD are being treated in a discriminatory manner when disciplined and their efforts fell short of the terms and conditions outlined in same stipulation/contract and this Plaintiff, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

285.    Based upon information and belief, per the terms of the foregoing stipulation/agreement, the Defendants City and NYPD were obligated to establish an "Advisory Committee" to address employment discrimination and retaliation concerns within the New York City Police Department.

286.    The Defendants City and NYPD breached the contract/stipulation agreement in that the Defendants failed to establish an "Advisory Committee" to address employment discrimination and retaliation concerns within the NYPD and their efforts fell short of the terms and conditions outlined in same stipulation/contract and this Plaintiff, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

287.    The Defendants City and NYPD breached the contract/stipulation agreement in that the Defendants failed to establish a meaningful and/or effective and/or operable "Advisory Committee" to address employment discrimination and retaliation concerns within the NYPD.

288.    As prima facie proof that the Defendants City and NYPD breached the contract/stipulation, the Officers outlined herein above in paragraph "181 – 1 to 6" are all Non-Afro-American, Non-African American and/or Non-Minority Officers who were charged with, pled guilty to and/or convicted at Departmental Hearings of more egregious offenses than the

Plaintiff herein and, yet, those officers received more favorable treatment, dispositions, punishments, penalties and/or sentences, did not receive Dismissal and were not discharged from the NYPD while the Defendants City, NYPD and Kelly disparately and unlawfully treated and terminated Plaintiff herein where Plaintiff was adjudicated as being guilty of being discourteous and inattentive.

289.    That the Defendants City and NYPD terminated Plaintiff's employment unlawfully based upon Plaintiff's race, national origin, color, religion, disability and in unlawful retaliation for Plaintiff complaining about the hostile work environment and discrimination against him by Defendants at the workplace in violation of the aforementioned Agreement/Contract.

290.    That the Defendants breached the foregoing contract/stipulation of settlement therein and, had the Defendants complied with the aforementioned stipulation of settlement/contract and its terms and conditions, had the Defendants established a review unit and advisory committee, in addition to the other terms and conditions outlined in said stipulation/contract, had the Defendants properly and/or adequately established same and/or had the review unit and advisory committee, if so established, been performing its duties as per the stipulation of settlement/contract to try and prevent the unlawful discrimination and disparate treatment of Latino, African American and/or other minority police officers, than the review unit, the advisory committee and the Defendants would have and should have detected, stopped, prevented and/or remedied the very unlawful discrimination, retaliation, hostile work environment and disparate treatment by Defendants against Plaintiff herein; particularly in reference to the unlawful disparate treatment by Defendants against Plaintiff related to their charges, investigation, prosecution, suspensions, findings of guilt, penalty assessed of Dismissal

76

and the ultimate penalty of termination that they subjected Plaintiff to when non-minority/non-Afro-American/non-African American officers were not so treated or terminated.

291.    That the foregoing stipulation of settlement/contract was designed to, in fact, protect the Plaintiff herein from the Defendants' unlawful treatment, acts, conduct and/or omissions herein in their unlawful, hostile, discriminatory, disparate, intentional, malicious, and/or retaliatory treatment and discrimination against him.

292.    As a result of the Defendants' breach of the foregoing stipulation of settlement/contract, the Plaintiff suffered and continued to suffer, culminating in the ultimate unlawful act of termination, the very unlawful, hostile, discriminatory, disparate, retaliatory conduct that the Defendants were obligated to establish said procedures to try and prevent and because of the Defendants' breach of same, the Defendants unlawfully continued their course of unlawful, hostile, discriminatory, disparate and retaliatory treatment against Plaintiff; particularly as to the prosecution, charges, suspensions, findings of guilt, penalty assessed of Dismissal and ultimate termination of Plaintiff by the Defendants when non-minority/non-Afro-American/non-African American police officers were not so treated or terminated by Defendants herein.

293.    That the Defendants breached the foregoing stipulation of settlement/contract and, as a direct and proximate result, Plaintiff suffered and continues to suffer damages herein including, but not limited to, deprivation of rights, denial of proprietary interest, lost income, denial of title, rank and position, denial of compensatory salary, denial of pension and retirement benefits, denial of medical benefits, attorneys' fees to defend Plaintiff against the Defendants in/at the Departmental trial and other economic damages as well as mental anguish, pain, humiliation and emotional distress.

294.   That as a direct and proximate result of Defendants' breach of the foregoing contract/stipulation of settlement, Plaintiff claims damages herein.

295.   Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

296.   That Plaintiff claims damages herein.

## DAMAGES

297.   As a direct and proximate result of all of the foregoing acts of the Defendants' Plaintiff sustained and suffered the following:

(a)   Violation of Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991;

(b)   Violation of Plaintiff's Rights as secured by 42 U.S.C. Section 1981, 1981(a), 2000, 2000(e), 2000(e)(3), and 2000(e)-2(a)(1), *et. seq.*;

(c)   Violation of Plaintiff's rights as secured by and under the Americans with Disabilities Act, 42 U.S.C. Sections 12102, 12111(8), 12112(a), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12111, et seq. (ADA);

(d)   Violation of Plaintiff's Rights as secured by the New York State Human Rights Law, N.Y. Executive Law, Article 15 and Sections 290-297;

(e)   Breach of 2003-2004 Stipulation of Settlement/Contract;

78

(f)     Specific Performance by Defendants to comply with 2003-2004 Stipulation of Settlement/Contract;

(g)     Injunctive relief enjoining Defendants from unlawfully discriminating against Plaintiff and other Latino, African American and/or minority police officers;

(h)     Humiliation, mental pain, anguish, pain and suffering, and emotional distress, (both intentional and negligent);

(i)     Economic damages including loss of income, salary, raises, benefits, pension, attorneys' fees;

(j)     Loss of promotion, title, position, salary, wages, pension, retirement benefits and/or medical benefits; and

(k)     Psychological, emotional and economic damages which are direct and/or proximate consequences of the Defendants' actions, that are continuing to date, and, upon information and belief, will continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CLIFFORD RIGAUD requests the following relief jointly and severally as against all of the Defendants:

1.     Award compensatory damages in an amount to be determined at trial;

2.     Immediate reinstatement to rank and seniority level with a retroactive date of any and all promotion, with benefits, salary, wages, raises, title, position and entitlement to the date and time that Plaintiff routinely would have and should

79

have been promoted to such rank and to any and all back pay/salary/wages/compensation/pension/benefits due and owing;

3.  Specific Performance by Defendants under the terms and conditions outlined in the 2003-2004 Stipulation of Settlement/Contract;

4.  Injunctive Relief enjoining Defendants from discriminating against Plaintiff and other Latino, African American and/or minority police officers;

5.  Award punitive damages in an amount to be determined at trial;

6.  Disbursements, costs and attorneys' fees; and

7.  For such other further relief to this Court may seem just and proper.

**ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED OR**

**HAVE OCCURRED.**

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated:     Jamaica, New York

July 31, 2013

Yours, etc.,

JOANN SQUILLACE (JS 4217)

Drummond & Squillace, PLLC

Attorneys for Plaintiff

CLIFFORD RIGAUD

175-61 Hillside Avenue, Suite 205

Jamaica, New York 11432

(718) 298-5050

80

## ATTORNEY'S VERIFICATION

JOANN SQUILLACE, an attorney duly admitted to practice before the Courts of the State of New York and before the Eastern and Southern Districts of New York of the United States District Court, affirms the following to be true under the penalties of perjury:

1.     I am an attorney at DRUMMOND & SQUILLACE, PLLC, attorneys of record for Plaintiff Clifford Rigaud. I have read the annexed **THIRD AMENDED COMPLAINT** and **JURY DEMAND** and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files and discussions with Plaintiff.

2.     This verification is made by me because Plaintiff is not presently in the County wherein I maintain my offices.

DATED:     Jamaica, New York
           July 31, 2013

           JOANN SQUILLACE

81