# "EXHIBIT L"

# Drummond & Squillace, PLLC

Attorneys at Law

175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
(718) 298-5050/ F: (718) 298-5554

www.dswinlaw.com

Stephen L. Drummond*
JoAnn Squillace**

George Savage, MD
Marsha Drummond, MS, ANT-BC

*Admitted NY, NJ, FL
**Admitted NY, NJ

February 27, 2013

Commissioner of the New York City Police Department
The Honorable Ray Kelly
One Police Plaza
New York, NY 10028

Re: Recommendation on Disciplinary Case Nos. 2010-0509 & 2011-4170:
Police Officer Clifford Rigaud

## MEMORANDUM IN RESPONSE

Dear Police Commissioner Kelly,

I trust all is well with you, Sir.

I write in response to Deputy Commissioner, the Honorable Martin G. Karopkin's, drafted proposed decision and recommendation in the above captioned matter and respectfully submit the within in response to same in an effort to urge you, Sir, to reconsider both the trial Court's decision and recommendation and, for the reasons stated below, to further request that you summarily reject both the findings and recommendation of Deputy Commissioner Karopkin. Before addressing the trial Court's reasoning and proposed decision, I must first address the Court's recommendation as to the Penalty.

## PENALTY

As the trial Court and you, Sir are aware, it is of constitutional importance that those accused are not discouraged from exercising their constitutional right to hold their accuser to the applicable standard of proof at trial. When, as in the within matter, a Court recommends drastic and severe punishment for those who exercise their right to hold their accuser to the burden of proof, then such an act can and will have a chilling effect because even the innocent officer may plead guilty simply out of fear of a drastic and unduly harsh punishment should he proceed to trial and face sentence by the Court. In the within matter, the Advocate's Office offered Officer Riguad, in exchange of a plea of guilty, thirty (30) suspension days and twenty (20) vacations days to cover all the Specifications. At the close of the trial of the within matter, the Advocates' Office recommended the very same punishment of the forfeiture of thirty (30) suspension days

1

and twenty (20) vacations days. The trial Court, having heard all the evidence, found the Respondent not guilty of at least one of the Specifications and, yet recommends the drastic and severe punishment of dismissal. The Court's recommendation is that from all accounts, even by the Court's very own reasoning, Officer Riguad, a disabled police officer as defined by the American with Disabilities Act, was the subject of a persistent and concentrated hostile work environment and retaliation where gravely offensive, disparaging and cruel remarks were repeatedly directed towards him on a regular basis. After being the target of this continuous onslaught of clear violations of the law as to the manner in which supervisors are to respect and treat subordinates, the Court found that he had two outbursts, was once inattentive on duty and once called a supervisor by that supervisor's first name only after said supervisor addressed Officer Riguad by his first name. In recommending dismissal, the Court referred to the foregoing as serious offenses that warrant the drastic measure of dismissal and further opined that even if Officer Riguad was the subject of discrimination at the work place (which is against the law), being the victim of discrimination at work is not a defense and is not, in the Court's view, a mitigating factor for the Court to consider in sentencing. With all due respect to the trial Court, such reasoning is wrong.

It is noteworthy that Specification Number Two under Disciplinary Case No. 2010-0509 stems from an ongoing incident between Officer Riguad and Lieutenant Margolis where the evidence established that Lieutenant Margolis engaged in offensive, disparaging and hostile conduct towards Officer Riguad, the entire Haitian people and towards all Haitian Officers. The evidence before the Court established that on or about January 12, 2010, the Island of Haiti suffered one of the world's most massive earthquakes which led to the loss of thousands of lives, billions of dollars in damages and immediate and continuous human suffering. World Leaders and nations took to the airways to offer their condolences and humanitarian aid to the People of Haiti. Several Haitian immigrants here in the United States were grief stricken having lost loved ones and many others, including Officer Riguad, had family members who were unaccounted for in Haiti. Nightly news showed, on a number of occasions, survivors being pulled from ruins days after the earthquake. The evidence before the Court established that with the foregoing backdrop as to a humanitarian crisis facing the world and with at least one Haitian officer present during Roll Call on or about January 17, 20110 (just five days after the earthquake and with people still buried alive), upon learning that some of his Officers were volunteering to head to Haiti to assist in this humanitarian crisis, Lt. Margolis made remarks to the effect that, in sum and substance: "you know how those Haitian people are—they all have guns and they like to shoot each other." The evidence established at trial that when Officer Riguad sought to speak with Lieutenant Margolis on February 2, 2010, the conversation was not just about the SP-10 assignment, but was also about the offensive, disparaging and hostile conduct of Lieutenant Margolis towards Officer Riguad during the January 17, 2010, Roll Call. Instead of apologizing for his offensive, disparaging and hostile conduct towards Officer Riguad, Lieutenant Margolis abused his authority by initiating the charges herein against Officer Riguad.

2

In the Court's reasoning, the Court seems to suggest that the New York City Police Department is a para-military organization and, as such, officers like Officer Riguad should expect such offensive, disparaging and hostile conduct towards them and in essence, should "soldier on." As one who has served six years on active duty in the United States Marine Corps as an enlisted Marine and currently over fourteen years in the United States Army Judge Advocate General's Corps, the undersigned is confident that a commanding officer would immediately be relieved of duty for cause if same officer were to engage in like conduct towards subordinates as that by Lieutenant Margolis as established by the evidence. To lead individuals, soldiers, marines and/or police officers does not give anyone the right to engage in unlawful conduct towards them and, the privilege to lead others also includes the obligation to ensure that their mental health is not being adversely affected by the offensive, disparaging and hostile conduct of the leadership. In an effort to ensure that there is no toxic leadership, the military often conducts that which is referred to as climate survey---this climate survey is designed to ascertain the climate of the work place to ensure that the leadership is treating those that are being led in the appropriate fashion. Based upon all the evidence presented at trial it is apparent that Officer Riguad's command is one that was replete with toxic leadership and this is a fact that the Court should have and could consider in making Its findings and recommendations.

It would be different if the Court reasoned in Its recommendation that the Court did not credit the evidence that Lieutenant Margolis made the foregoing remarks about the Haitians. However, it appears that the Court correctly credited such evidence as the record is replete with evidence from a number of witnesses, including the Advocate's witnesses, that Lieutenant Margolis did in fact make the offensive, disparaging and hostile remarks. Under federal law, a single of act of offensive conduct can be sufficient to sustain a finding of an employer's unlawful discrimination and/or hostile work environment. In the within matter, as established by the evidence, every one of the Specifications, except arguably the Specification relative to being inattentive, that was brought before the Court against Officer Rigaud was predicated upon some act by the leadership that reasonably could be viewed as unlawful. In fact, the evidence from the Advocates' witnesses' established that on at least one occasion, Officer Riguad yelled out in apparent frustration—"why are you guys messing with me!!" In response, the evidence established that Police Officer Callahan—a junior officer to Police Officer Riguad, stated words to the effect, in sum and substance, that Officer Riguad was EDP—meaning that he was an emotionally disturbed person—and that the supervisors don't like him and he does not deserve to wear the uniform.

The circumstances that led to Officer Riguad's outburst was not only a factor that the Court should have considered during the findings portion of the case, but after concluding that Officer Riguad was guilty, the Court had an obligation to consider the mitigating circumstances. This is an Officer that is disabled as defined by the American with Disabilities Act. Officer Riguad's disability is one that affects his ability to cope and deal with stress and the evidence before the Court is that he takes medication for his disability. In fact, Officer Riguad informed the Court that he is currently treating with Dr. Cassin

3

and that he is taking Focalin in an amount of 50 milligrams. The Court in Its reasoning stated that the Court is not opining that Officer Riguad is not disabled, but that the issue was not put forward in a meaningful way. It is unclear if the Court is suggesting that the Court does not believe that he is disabled when there is evidence from him that he is disabled and Officer Alexander also testified that she is aware that Officer Riguad is disabled. Or, is the Court saying that the Court does not believe it was enough? The Court reasoned that the "… the issue [officer Riguad's disability] was not put forward in any meaningful way." It is noteworthy that throughout the trial, which again spanned over several months (April 12, 2012, May 4, 2012, July 13, 2012, August 3, 2012, September 28, 2012, October 5, 2012, October 19, 2012, November 23, 2012, and December 6, 2012), the Court asked several questions throughout the entire trial on many issues. The Court sua sponte (on Its own without any registered objection from the prosecutor) sustained several objections and precluded numerous lines of questioning of prosecution witnesses by the undersigned. This was a Court, at Its own discretion that was very active at several stages of the proceedings as the record undoubtedly will reflect. To the best of the undersigned's recollection—I don't believe the Court posed a single question that in any way would suggest that the Court had any concern as to whether Officer Riguad was disabled. To the best of my recollection, I don't believe the Court posed a single question as to the issue of Officer Riguad's disability, the medication he was taking and/or the dosage of same medication. If the Court wanted absolute and unequivocal proof that Officer Riguad was disabled, was taking medication, had prescribed medication and how much of same he was taking, just as the Court did on numerous other issues as the trier of fact, and as the person in charge of the entire court room and the proceedings, it was well within the Court's discretion and duty to present even one question about the disability of Officer Riguad especially since it now appears that this issue was one of great concern for the Court and one that could have served to mitigate the penalty recommendation of the Court. It is worth mentioning also that the prosecution in this matter, on a trial that spanned over several months, also did not dispute and/or refute in any way, shape, or form that Officer Riguad is disabled and on medication.

The Court further reasoned that "no evidence was offered that Respondent ever requested or was granted special accommodation by the Department." To that end, the Court is correct. It should be noted that under the law, employees are not under an obligation to request that employers and supervisors comply with the law and not subject employees to repeated and ongoing hostile work environment. The undersigned is of the opinion that the Court would agree that when Officer Riguad reported to work after his native country had just suffered the most devastating earthquake in its history and his belief that family members were buried under the rubbles and with an optimistic view of them being still alive, he was not under a duty to request of Lieutenant Margolis during Roll Call five days later to not make offensive, disparaging and hostile remarks that contributed to a hostile work environment.

The Court's recommendation is unduly harsh and failed to consider that Officer Riguad is in fact disabled and that his particular disability—Attention Deficit Hyperactivity

4

Disorder (ADHD), while simultaneously being subjected to offensive, disparaging and hostile conduct towards him, is in fact a defense and mitigation to the Specifications and to the ultimate recommendation of punishment by the Court.

The Court further failed to consider Officer Riguad's military service in recommending that Officer Riguad should be dismissed from the New York Police Department. As the record indicated, Officer Riguad served a number of years in the United States Army and was honorably discharged from that service. In addition, the record further indicates that Officer Riguad served honorably in the military while suffering from the very same disability that was brought to the Court's attention. In addition, these charges mark the very first time that this Officer ever faced disciplinary charges. The foregoing should have been considered by the Court and reconciled with the charges in recommending punishment.

## THE COURT'S FINDING OF GUILT

Turning now to some of the Court's reasoning that led to the finding of guilt as to some of the Specifications, it is respectfully suggested that the Court, and you, Sir, reconsider the reasoning that the Court embarked upon in finding Officer Riguad guilty.

The credible evidence readily established that during Lieutenant Margolis command over Officer Rigaud, Lt. Margolis knew that Officer Riguad is Haitian and unlawfully made disparaging remarks about Haitians in the presence of Officer Riguad which, standing alone, created an unlawful hostile work environment for Officer Riguad. The credible evidence further established that Lieutenant Margolis, while knowing that Officer Riguad is Muslim, made additional disparaging remarks in the presence of Officer Riguad regarding Muslims and Palestinians who are Muslims which, standing alone, created an unlawful hostile work environment for Officer Riguad. In Its reasoning the Court opined that "...whatever occurred at that roll call is not a factual issue to be determined in this case.... Margolis is not on trial here." First, with all due respect to the Court, it is humbly suggested that the Court should have and could have chosen a more appropriate phrasing in referring to racially insensitive statements being stated at the work place other than the phrase of "...whatever occurred at that roll call." The simple fact of the matter is it is a violation of federal law to create a hostile work environment for any employee, particularly based upon their religious faith and/or their ethnicity. America will and always will be a better country if we all, as we are morally and lawfully obligated to do, respect each others' ethnicity and faith.

The verbal exchange between Lieutenant Margolis and Officer Riguad on February 2, 2010, was about two issues. The record will support that Officer Riguad, after filing a complaint for hostile work environment against Lieutenant Margolis relative to the disparaging remarks made about Haitians, Muslims and Palestinians, sought to discuss in private with Lieutenant Margolis a change in his assignment. Lieutenant Margolis had changed Officer Riguad's assignment subsequent to the foregoing to SP-10—an assignment, which from all accounts of the witnesses at trial, is reserved for rookie cops.

5

In response, Lieutenant Margolis insisted that the conversation take place in public and, of all places, by the Sergeant's desk which, presumably is the busiest area at the precinct. The changing of Officer Riguad's assignment subsequent the Officer Riguad's filing of the EEO complaint against Lieutenant Margolis by itself under federal law could be viewed as retaliation by Lieutenant Margolis against Officer Rigaud as every employee has a right to register complaints about the workplace and any unlawful treatment of employees at the workplace. Officer Riguad simply sought to discuss the changing of his assignment and the remarks by Lieutenant Margolis relative to Haitians, Muslims and Palestinians.

Therefore, given that the Court heard compelling evidence that Lieutenant Margolis, one of the persons who initiated Specifications against Officer Riguad, which came subsequent to Officer Riguad filing allegations of discrimination, retaliation and hostile work environment against that very same officer, the Court cannot and should not have dismissed the underlying act of Lieutenant Margolis by simply stating that "whatever occurred at roll call is not a factual issue to be determined in this case." In that regard, with all due respect, the Court could not be any more wrong. The events that occurred at roll call are essential for the Court in determining the motive and credibility of Lieutenant Margolis in initiating Specifications against Officer Riguad as well as being directly relevant to Officer Rigaud's state of mind and further can serve not just a as mitigating factor, but as a potentially complete defense to the charges as you, Sir, are aware is the case of evidence in criminal proceedings. Indeed, it is significant to note that I do not believe the record will reflect any denial of the foregoing by Lieutenant Margolis or any other witness relative to the disparaging remarks about Haitians, Muslims and Palestinians. All the evidence established that Lieutenant Margolis did in fact make those remarks. Those remarks, and a perceived retaliatory act by Lieutenant Margolis against Officer Riguad, led to the verbal exchange between Officer Riguad and Lieutenant Margolis which forms the basis of one of the Specifications that the Court had to consider. How could the Court reasonably and rationally dismiss the unlawful acts of Lieutenant Margolis as an issue not to be determined by the Court when the state of mind of Officer Riguad in having a verbal exchange between him and Lieutenant Margolis was, as established by the evidence, affected by the emotional, psychological and unlawful retaliatory abuse Officer Riguad was experiencing at the time and at the hands of Lieutenant Margolis? In short, the Court's reasoning seems to suggest that whatever Lieutenant Margolis said and did to Officer Riguad, or may have said and done to Officer Riguad, had absolutely no bearing on the Court's determination of guilt and/or sentence which is a position that is inconsistent with our jurisprudence.

Turning now to the Court's reasoning as to the weight, significance and relevance of the two evaluations of Officer Riguad for the year 2009—one by his supervisor and the other by Lieutenant Margolis for the very same rating period. From the onset, I think we can all agree that it is not consistent with the New York City Police Department's procedure and protocol for an officer to have two separate and different evaluations to be placed in his/her service record for the very same one year rating period. The credible evidence established at trial that for the rating year 2009, Sergeant McClinton-Young was the

6

Supervisor of Officer Riguad. The credible evidence at trial further established that from January 2009 to September of 2009, Lieutenant Margolis was not in the chain of command of Officer Riguad and, while they may have been at the same precinct, they were in different units, worked different hours and Lieutenant Margolis at no time during that nine month period had evaluating and/or supervisory authority over Officer Riguad. To use a military analogy, in essence, they may have been assigned to the same base, worked in the same building but had different chain of command. The evidence further established that Lieutenant Margolis fell into Officer Riguad's chain of command for three months of the evaluation year of 2009—October, November and December. However, according to Sergeant McCliton Young's testimony, after she, who had the obligation and the opportunity to observe Officer Riguad over the entire year of 2009, evaluated Officer Riguad, she was directed by Lieutenant Margolis to change her evaluation. She did not change same because her evaluation of Officer Riguad was her opinion based upon her observation of Officer Riguad. Lieutenant Margolis, who could at best only evaluate Officer Riguad for three months, could not logically, reasonably and justly evaluate Officer Riguad for a period of time that he was not in a capacity to observe Officer Riguad.

The Court reasoned that the evaluations are not relevant and further opined that the undersigned insisted that the evaluations be part of the record and that such insistence does not give the evaluation relevance. First, I am and will always be first an Officer of the cCurt, duty bound to obey the rules of the Court. If the Court ruled that the evaluations were inadmissible, I would respectfully note my objection and abide by the Court's ruling. While the Court opined that the evaluations are not relevant, the Court simultaneously opined that Lieutenant Margolis' statement that he believed that Office Rigaud was not an effective officer was the relevant issue. Given that Lieutenant Margolis initiated one of the Specifications against Officer Riguad, it would be reasonable to conclude even before the trial commenced that Lieutenant Margolis would not come to Court to testify glowingly about Officer Riguad being an effective officer. As such, the trier of fact as the Court was, should consider motive, reason and circumstances that may cause a witness to be biased and/or interested in the outcome of a proceeding. The trier of the facts should also consider the conduct of an interested witness before and subsequent to the event that supposedly gave rise to the issue before the Court. Evidence that Lieutenant Margolis directed Sergeant McClinto-Young to change the favorable evaluation of Officer Riguad, which included a nine month period of time that Lieutenant Margolis could not reasonably have had an opinion of Officer Riguad's work, should have been considered by the trier of fact in assessing the credibility, motive and interest of Lieutenant Margolis. Evidence that Lieutenant Margolis changed Officer Riguad's favorable evaluation to an unfavorable one after Sergeant McClinton-Young refused to change her favorable evaluation of Officer Riguad should have been considered by the trier of fact in assessing the credibility, motive and interest of Lieutenant Margolis. The fact that Lieutenant Margolis unlawful retaliation of adversely changed Officer Riguad's evaluation subsequent to Officer Riguad filing an EEOC complaint against Lieutenant Margolis should have been considered by the trier of

fact in assessing the credibility, motive and interests of Lieutenant Margolis in filing Specifications against Officer Riguad.

The Court further reasoned that an ugly part of this case is a claim that Officer Riguad attempted to put forward that Officer Callahan had a personal relationship with Lieutenant Margolis who gave her power over the roll call. First, the question presented to Officer Callahan as to whether she had or was having a personal relationship with Lieutenant Margolis was appropriate. The only reason that evidence was not presented to that effect is because, as the trail Court is aware, once Officer Callahan denied having the relationship, any effort to establish the truth thereof amounts to collateral impeachment which, under the rules of evidence, is not allowed. As such, out of respect for the Court and respect for the rules of law and evidence, the undersigned did not elicit testimony from both Officer Riguad and Officer Alexander to refute Officer Callahan on that issue. Therefore, the Court should not summarily conclude that, since Officer Riguad was precluded by the rules of evidence from offering evidence to establish a collateral matter, there is no evidence to prove that which was denied. Again, this was another area within the proceedings that was within the Court's discretion to inquire as to the basis of the question or to ask Its own question on that issue. Further, the prosecutor could have asked for an offer of proof as to the basis of the question. If my memory serves me correctly, before the witness was asked the single question as to the basis of her relationship with Lieutenant Margolis, permission was requested of the Court to allow or preclude the question and this was done outside of the presence of the witness. It was within the Court's discretion at that point to allow or deny the question. The court within Its discretion chose to allow the question. To allow the question and now assert that asking the question was the "...ugly part of this defense...", frankly leaves the undersigned at a loss for words. In addition, there was ample testimony at the trial that readily demonstrated that Officer Callahan was granted and was receiving preferential treatment by Lieutenant Margolis. The evidence established that Officer Callahan was junior both to Officer Riguad and Officer Alexander. The evidence further established that SP-10 duties are reserved for rookie officers which at the time of the within matter would include Officer Callahan. However, while Officers Riguad and Alexander were being assigned SP-10 duties, Officer Callahan was not. In addition, while Officer Riguad was being assigned repeatedly to less preferential duties at One Police Plaza, Officer Callahan was not. The trier of fact could and should consider these factors in assessing the credibility of both Officer Callahan and Lieutenant Margolis as to the foregoing. It is worth mentioning that in another setting before other triers of fact, evidence of the relationship between Lieutenant Margolis and Police Officer Callahan will be forthcoming and Officer Callahan's denial of that relationship under oath will then become a significant factor in assessing the credibility of both her and Lieutenant Margolis.

The Court's reasoning that there was not an iota of evidence to establish that Officer Rigaud had any reason to believe that Inspector McEvoy was a racist and that, to Officer Rigaud, morale became low since Deputy Inspector McEvoy took command, with all due respect, is misplaced. The evidence established that Officer Riguad not only filed EEO

8

complaint but also complained to the chain of command as to the disparaging remarks and the hostile work environment that was being visited upon him under and at the command of Deputy Inspector McEvoy. The record does not contain a shred of evidence to suggest that any action was taken by the command to address the unlawful conduct that Officer Riguad complained of. In addition, given Lieutenant Margolis' disparaging remarks about Haitians, Muslims and Palestinians, given Officer Callahan's remark to Officer Riguad that Officer Riguad was an emotional disturbed person, that the command does not like him and that he does not deserve to wear the uniform, it should not be inconceivable that to Officer Riguad morale was low. The simple fact is that based upon all the evidence presented at trial, particularly that Officer Riguad broke down on the witness stand before the Court a number of times when testifying about the hostile work environment and the unlawful acts that were visited upon him, a trier of fact could conclude that he was in fact subjected to unlawful discrimination and that said discrimination was condoned, ignored and/or was not addressed by the command.

Finally, the Court's statement that "...even if Respondent was correct and Callahan was [t]ormenting him it would not justify the kind of outburst that he engaged in..." is telling as to the Court's reasoning as a trier of fact on the issues presented to the Court. In other words, if Officer Callahan, a junior police officer to Officer Riguad was tormenting Officer Riguad, Officer Riguad is absolutely unjustified in having an outburst. It is against the law to torment anyone at the work place. No one should have to go to work within the United States of America and be subjected to any conduct that can even remotely be referred to as torment. Indeed, it is an affirmative defense to having an outburst at the workplace if one is being tormented. Thus, since it is clear by the Court's reasoning that even if Officer Callahan was tormenting Officer Riguad that such torment was not considered by the Court as an affirmative defense or a mitigating factor in the penalty phase, the Court's findings and recommendation is legally flawed and, as such, cannot and should not be relied upon by you, Sir as the ultimate decision maker.

The undersigned is led to believe that you, Sir served as a former Marine. I am confident that the you, Sir, are fully aware that within the United State Marine Corps, Marines are not subjected to racially disparaging remarks and conduct such as that inflicted upon Officer Riguad by his command about which he emotionally, and at times sobbing on the stand, testified to before the Court and, where it is discovered that efforts are not taken to correct it immediately, those involved are relieved for cause. The New York City Police Department is a rather large organization and admittedly, it is rather difficult to ascertain the culture of tolerance that is being condoned at each command. In the case at bar, there has not been a single shred of evidence that any disciplinary action was taken by the New York City Police Department against a single officer that caused these unlawful acts to be visited upon Officer Riguad. This too was a factor that the Court could have and should have considered in assessing the penalty which the Court simply did not.

WHEREFORE, for all the foregoing reasons, the trial Court's findings and recommendation should be summarily rejected.

9

Respectfully submitted,

*Stephen L. Drummond*

STEPHEN L. DRUMMOND
DRUMMOND & SQUILLACE, PLLC
Attorneys for Police Officer Riguad
175-61 Hillside Avenue, Suite 205
Queens, New York 11432